## WHITNEY *v.* WENMAN.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 576. Submitted April 24, 1905.—Decided May 29, 1905.

The bankruptcy court has jurisdiction of a proceeding in the nature of a plenary action brought by the trustee to determine controversies in relation to property held by the bankrupt or by other parties for him, and the extent and character of liens thereon; and this applies to a suit brought against parties claiming possession of goods in the bankrupt's store, as warehousemen, under a nominal lease of the store from the bankrupt.

A receiver in bankruptcy is appointed as a temporary custodian and it is his duty to hold possession of property until the termination of the proceedings or the appointment of the trustee, and meanwhile the bankruptcy court has possession of the property and jurisdiction to hear and determine the interests of those claiming liens thereon or ownership thereof, and this jurisdiction cannot be affected by the receiver turning the property over to any person without the authority of the court.

EDWARD B. WHITNEY, as trustee in bankruptcy of Daniel LeRoy Dresser and Charles E. Riess, members of the firm of Dresser & Company, filed a bill in equity against Charles H. Wenman, Stuyvesant Fish, George C. Boldt, the Security Warehousing Company and others, in the District Court of the United States for the Southern District of New York. Upon demurrer to the bill, the court dismissed the same for want of jurisdiction. The allegations of the bill set forth in substance: That on September 17, 1903, the complainant was duly appointed trustee in bankruptcy of. Dresser and Riess, doing business as Dresser & Company, and that as such trustee he qualified on September 29, 1903. That during the time mentioned in the bill, and up to March 7, 1903, Dresser & Company were carrying on business as merchants in the city of New York. That the defendants, the Security Warehousing Company and the United States Mortgage and Trust Company, were corporations of the State of New York. That the defendant, Charles H. Wenman, acted as the agent and attorney in fact of the defendants Fish and Boldt. Prior to March 7, 1903, the bankrupts, partners as Dresser & Company, became insolvent, and on that day assigned all their property for the benefit of their creditors. On March 9, 1903, upon the petition of certain creditors, Robert C. Morris and Charles S. Mackenzie were appointed by the District Court for the Southern District of New York receivers in bankruptcy of Dresser & Company. That at least six months prior to March 7, 1903, the firm of Dresser & Company had been insolvent and unable to pay its debts, and was only able to continue in business by borrowing large sums of money, and in order not to injure the creditors it became necessary to pledge the goods, wares and merchandise in which the company was dealing, but to conceal said pledge from the unsecured creditors. That the goods dealt with by Dresser & Company consisted for the most part of Japanese silks imported for sale. For the purpose of pledging these goods with certain of the creditors, without the knowledge of the other creditors, Dresser & Company entered

into a plan or arrangement with the defendants, the Security Warehousing Company, to wit, a certain alleged lease of the store, display and sales rooms was made by Dresser & Company to the Security Warehousing Company at a nominal rental of one dollar a year, in order that thereafter the said warehousing company might claim that the goods and display and sales rooms belonged to it. That the goods in reality belonged to the firm of Dresser & Company, and there was no change of location or ownership of the said goods, but Dresser & Company remained in possession and control thereof and permitted the display of them in the same manner as that firm had done prior to the pretended storage. Dresser & Company exhibited the goods to their customers, sending portions to dyers and manipulators, and generally handled and used them as if they were their own, and free and clear from all claims and encumbrances. That the Security Warehousing Company exercised no supervision or control over the said goods, but merely employed, or pretended to employ, the confidential clerk and secretary of Daniel LeRoy Dresser and Dresser & Company, as its alleged custodian, in whose charge it was claimed the goods had been placed at a salary of one dollar per month. She exercised no control or supervision over the goods, but during the period of her employment continued to act as the confidential secretary of the bankrupts. The Security Company also placed a few small tags on the shelves and bins in which the goods were stored and displayed for sale, upon which tags the name of the Security Company was printed, but the tags were not easily discovered, and in most instances were so placed as not to be readily seen and were not of such a character as to identify the goods.

The bill then avers the issue of certain warehouse receipts upon said goods, representing that they had been stored with the company at its warehouse at 15–17 Greene street, New York, which was, in fact, the store of Dresser & Company. Then follow allegations as to the delivery of the warehouse receipts, some to the United States Mortgage and Trust Company and

some to the defendant Wenman for himself or defendants Fish and Boldt. And it is averred that the security instruments did not describe the goods in such a way as to make them capable of identification. That Daniel LeRoy Dresser was one of the incorporators of the Security Warehousing Company, and one of its directors and stockholders. That at the time of the delivery of the security instruments Charles S. Mackenzie was general counsel of the Security Company, and was fully cognizant of the system of pretended storage before described, and was also personal counsel for Daniel LeRoy Dresser. That after the delivery of the warehouse instruments Dresser & Company continued to display and sell and dispose of the goods and manage the business in the same manner that they had been in the habit of doing prior to the said pretended storing, without objection from the Security Warehousing Company. Then follow allegations as to the knowledge or opportunity for knowing on the part of the defendants of the situation above described. When the receivers Morris and Mackenzie went into possession of the stock of Dresser & Company on March 9, 1903, upwards of $150,000 worth of the goods was still in the possession and under control of Dresser & Company. After the receivers had taken possession of the store the Security Warehousing Company notified them that it claimed that the store display and sales rooms belonged to it under the alleged lease, and that the goods therein contained had been stored with Dresser & Company, and requested the delivery of all the goods to it. The receivers did not dispute this claim of the Warehousing Company, but complied with it. Neither the court or the unsecured creditors of Dresser & Company were advised of the facts concerning this claim or the character of the pretended storing upon which the issue of the so-called warehouse receipts was based. Then follow allegations as to the sale of the goods, and that the Security Warehousing Company claimed that certain of the goods supposed to have been stored with Dresser & Company and covered by the security instruments had been sold by

Dresser & Company before March 7, 1903, amounted to the sum of $22,000. That said receivers collected upwards of $20,000 of accounts receivable of Dresser & Company, and paid the same over to the Security Warehousing Company. That these goods were sold and the accounts collected by the warehousing company before the appointment of complainant as trustee in bankruptcy of Dresser & Company. None of said goods or their proceeds have come into the hands of the trustee except the sum of $1,944.93, paid to the complainant by the Security Company. Then follow averments as to the payment of the proceeds of the goods sold and accounts collected to the other defendants and the holders of said warehouse receipts. It is averred that the books and records of the Security Warehousing Company are lost or destroyed. It is alleged that the attempt to create a lien upon the goods in the manner aforesaid was contrary to law and the statutes of the State of New York. That the silk goods had been sold at much less than their value. The prayer of the bill is that the security instruments be declared invalid, fraudulent and void, and that the complainant be decreed the owner of the goods and accounts, and that the defendants be required to account for the value of the same, and for general relief as the nature of the case may require.

*Mr. Robert D. Murray, Mr. J. Aspinwall Hodge* and *Mr. George H. Gilman* for appellant:

The District Court had jurisdiction over this suit, because the subject matter thereof is in its custody. *White* v. *Schloerb,* 178 U. S. 542; *Bardes* v. *Bank,* 178 U. S. 524, distinguished.

Where a court of equity has taken possession of property for any reason, and has placed it in the custody of receivers, sequestrators or custodians, it will maintain its possession of such property and will determine all rights with respect thereto, even though the actual physical custody of the property may have been parted with by its officers, either under void orders of the court, *Minnesota Co.* v. *St. Paul Co.,* 2 Wall. 609, 632,

or where the property has been obtained from the receiver or other court officer, through collusion with him (as in this case) or by fraud. *De Winton* v. *Brecon*, 28 Beavan, 200. See also *Morgan's Co.* v. *Texas Central*, 137 U. S. 171, 201; *Smith* v. *Express Co.*, 135 Illinois, 279, 292; *Sharpe* v. *Doyle*, 102 U. S. 686.

Section 70e of the bankrupt act, as amended, expressly confers jurisdiction upon the District Court of a suit to set aside transfers made prior to the filing of a petition.

Appellees are not *bona fide* holders of the silks and the accounts. *Shaw* v. *Railroad Co.*, 101 U. S. 557; *Pollard* v. *Vinton*, 105 U. S. 7. As to rights of the holders of warehouse receipts see *Friedlander* v. *Texas & Pacific*, 130 U. S. 415, 424; *The Carlos F. Roses*, 177 U. S. 655, 665. The goods never having been really stored the receipts are voidable. *Yenni* v. *McNamee*, 45 N. Y. 614.

As to *Gregory* v. *Atkinson*, 127 Fed. Rep. 183, cited and referred to by the appellees to effect § 70e, does not give jurisdiction where the defendants do not consent, see cases holding that § 70e does give jurisdiction without the consent of the defendants. *Horskins* v. *Sanderson*, 132 Fed. Rep. 415, 416; *In re Leeds Woolen Mills*, 129 Fed. Rep. 922, 926; *Pond* v. *N. Y. Nat. Exch. Bank*, 124 Fed. Rep. 992; *Lawrence* v. *Lowrie*, 133 Fed. Rep. 995; *Delta National Bank* v. *Easterbrook*, 133 Fed. Rep. 521.

The question has not, as yet, been passed upon by this court.

In construing a statute, a meaning must be given to each and every part thereof, and the plain intent as expressed in the amendment to § 70e, that suits of the character therein enumerated may be brought in the District Court, requires a construction which will confer such jurisdiction, and not a construction such as is contended for by the appellees, which will render its language meaningless.

Section 23b is a general provision and § 70e is a special one. Where there is any conflict between a general and a special

provision, the universal rule of construction requires that the special provision shall be considered as an exception to the general rule, contained in the general provision. *Townsend* v. *Little,* 109 U. S. 504, 512; *United States* v. *Nix,* 189 U. S. 199, 205.

Appellees having demurred only as to jurisdiction cannot now bolster up their case by arguing the merits of the cause of action as if they had demurred generally. This they cannot do. The certificate raises only the question of jurisdiction of courts of the United States as such. *Schweer* v. *Brown,* 195 U. S. 171; *Lucius* v. *Cawthorn-Coleman Co.,* 190 U. S. 149. The merits of the case are not before this court.

Appellees confuse the New York lien law as to chattel mortgages with the personal property law as to pledges and other charges. *Hangen* v. *Hachemeister,* 114 N. Y. 566; *Southard* v. *Benner,* 72 N. Y. 424; *Russell* v. *Winne,* 37 N. Y. 591. And the question of jurisdiction alone can be considered. Act of March 3, 1891, c. 517, § 5; *Hennessy* v. *Richardson Drug Co.,* 189 U. S. 25, 33; *Huntington* v. *Laidley,* 176 U. S. 668, 679; *McDonald* v. *Smalley,* 1 Pet. 620.

As to *Re Economical Printing Company,* 110 Fed. Rep. 514, cited to effect, that there should have been an allegation in the bill that there was a judgment creditor in existence, in whose right the trustee was acting, see *In re Garcewich,* 115 Fed. Rep. 87.

The lien law of New York provides that transactions such as are disclosed by the appellant's bill, shall be " absolutely void as against creditors."

*Muller* v. *Nugent,* 188 U. S. 1, 14, holds that the filing of a petition in bankruptcy is in effect a levy of attachment and it is settled law of the State of New York that an attaching creditor may attack an invalid chattel mortgage.

Other Circuit Courts of Appeals have refused to follow *Re Economical Printing Company, supra.* See *Chesapeake Co.* v. *Seldner,* 112 Fed. Rep. 593; *Re Antiago Screen Co.,* 123 Fed. Rep. 249; *Re Rodgers,* 125 Fed. Rep. 169; *Re Pekin Plow Co.,*

112 Fed. Rep. 308; *Spencer* v. *Duplex Co.*, 112 Fed. Rep. 638, 643; *In re Beede*, 126 Fed. Rep. 853; *Mueller* v. *Bruss*, 112 Wisconsin, 406, 412, and cases cited.

*Hewit* v. *Berlin Co.*, 194 U. S. 302, held in construing § 112 of the lien law of New York with respect to conditional sales, that a trustee in bankruptcy has no standing to attack a voidable transaction thereunder.

*Mr. Edwin B. Smith* for appellee, Security Warehousing Company, as to question of jurisdiction:

The fair presumption as to a court of limited jurisdiction is against the jurisdiction until the contrary appears. *Thomas* v. *Board*, 195 U. S. 210; *People* v. *Spencer*, 55 N. Y. 1; *Fife* v. *Whittell*, 102 Fed. Rep. 539; *Pacific Railway* v. *Los Angeles*, 194 U. S. 118. The history of the act shows this jurisdiction never was intended; that § 70e affects fraudulent conveyances running back through the period of the State's statutes of limitations which are a fraud on creditors though made without reference to the bankrupt act. These long past transactions are left to the state courts unless defendant consents to the jurisdiction of a Federal court. Collier on Bankruptcy, 4th ed., 250; *Gregory* v. *Atkinson*, 127 Fed. Rep. 183; Brandenberg, 369, § 578.

To maintain an equity suit under § 70e, by a trustee, these facts must be averred with the certainty and positiveness required in equity pleadings, viz.: (1) A transfer by the bankrupt; (2) such as his creditor might have avoided; (3) that the defendant is not a *bona fide* holder for value; (4) that the proposed defendant has consented to the bringing and prosecution of the suit in the Federal court. Before a party can avail himself of the statutory right he must show upon the record that his is a case which comes within the provisions of the statute. *Pacific Railway* v. *Los Angeles*, 194 U. S. 118.

In this case the bill does not properly aver any one of the necessary jurisdictional facts. It is immaterial how this failure to state jurisdictional facts is called to the attention of the

court. *Chase* v. *Palmer*, 23 Maine, 345; *Richards* v. *Lake Shore*, 124 Illinois, 521, and the presumptions are against it. Wels. Eq. Pl. 10, 126; M. & F. 128; *Vernon* v. *Vernon*, 2 Myl. & Cr. 145; *Clark* v. *Dillon*, 97 N. Y. 373.

The transfer by the bankrupt was not one that any creditor might have avoided. A general lien was created at common law and sustained by statute. *Brooks* v. *Hanover Bank*, 26 Fed. Rep. 302; *Stallman* v. *Kimberly*, 121 N. Y. 393; *Yenni* v. *McNamee*, 45 N. Y. 614. A trustee in bankruptcy can avoid a transfer only to the extent that a judgment creditor could. *Re N. Y. Economical Printing Co.*, 49 C. C. A. 133; *Re Kellogg*, 112 Fed. Rep. 52; *Hewit* v. *Berlin*, 194 U. S. 302; *Thompson* v. *Fairbanks*, 196 U. S. 526; *In re Garcewich*, 115 Fed. Rep. 87.

The bill does not charge that defendants were holders for value.

It is not the defendant's consent that is made a condition precedent to jurisdiction, but that of the person whom the trustee proposes to make a defendant.

A "proposed" defendant is not one *in esse*, but a person intended to be made such *in futuro*. 27 App. Div. N. Y. 110. The purpose to sue him in a bankruptcy court must be communicated, and assented to by him, before service of the summons; for that service makes him, *eo instanti*, a defendant, calling him into court to make some defense. 184 U. S. 26.

Section 23 does not say simply no suit shall be brought without the consent of the proposed defendant; it adds "or prosecuted." Consent to the prosecution of a suit requires something more than merely appearing to demur. The *Bardes case* went up on a demurrer to the jurisdiction. 178 U. S. 525; *In re Thomson*, 112 Fed. Rep. 946; *Donnelly* v. *Cordage Co.*, 66 Fed. Rep. 613; *St. Louis Ry.* v. *McBride*, 141 U. S. 127; *Louisville Traction Co.* v. *Cominger*, 184 U. S, 26; *In re Mitchie*, 116 Fed. Rep. 725; *In re Steuer*, 104 Fed. Rep. 977; *In re Hembey-Hutchinson Pub. Co.*, 105 Fed. Rep. 909.

*Mr. Louis F. Doyle* for appellees, Wenman and others:

The bill is not framed as an application for the exercise of the summary jurisdiction of the court of bankruptcy and it seeks relief wholly beyond that jurisdiction. *Bardes* v. *Bank,* 178 U. S. 524; *Whitney* v. *Wenman,* 96 App. Div. N. Y. 290; *White* v. *Schloerb,* 178 U. S. 542; *Mueller* v. *Nugent,* 184 U. S. 1; *Minnesota* v. *St. Paul Co.,* 2 Wall. 609; *Morgan Co.* v. *Tex. Cent. Ry.,* 137 U. S. 171; *Sharpe* v. *Doyle,* 102 U. S. 171, distinguished.

On the admitted facts it does not appear that the property was *in custodia legis.* ·See *Bush* v. *Export Co.,* U. S. Circuit Ct., E. D. Tennessee, August, 1904.

Jurisdiction is not conferred by § 70e. *Bardes* v. *Bank,* 178 U. S. 524, and cases cited by other counsel for appellees.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

This case is here upon the question of the jurisdiction of the District Court to entertain the action. The case in the court below was dismissed for want of jurisdiction, the demurrer having been sustained solely upon the ground that the bankruptcy act of July 1, 1898, as amended by the act of February 5, 1903, gave the court no jurisdiction. We are not concerned with the merits of the controversy further than the allegations concerning the same are necessary to be considered in determining the question of the jurisdiction of the District Court as a court of bankruptcy to entertain this suit. It is sufficient to say that in our opinion the bill made a case which presented a controversy for judicial determination as to the right of the defendants to hold the lease and property under the alleged security of the warehouse receipts undertaken to be issued in the manner set forth in the petition. Whether it will turn out upon full hearing that the lease and securities are good is not now to be determined. The bill makes allegations which raise a justiciable controversy as to the validity

of the alleged lien in view of the lack of change of possession of the goods under the circumstances set forth. The question for this court now to determine is whether the bankruptcy court, on the allegations made and admitted as true by the demurrer, had jurisdiction to determine the controversy. It is positively alleged in the bill that the supervision and control of the goods continued in the firm of Dresser & Company, and that the alleged doings of the Security Warehousing Company and its agents were merely colorable and did not, in fact, change the control over the goods, nor give any notice of the alleged lease of the Warehousing Company, nor the lien of the instruments thereby secured. It is further positively averred that when the receivers were appointed upwards of $150,000 worth of goods belonging to the firm were in the possession and under the control of the bankrupts, and after the receivers had taken possession of the store the goods were delivered up to the Warehousing Company without any order or attempt to procure the sanction of the court to such surrender of the property. Under these circumstances had the bankruptcy court jurisdiction to determine the rights of parties claiming interests in the property?

Section 2 of the bankrupt act of 1898, among other things, confers jurisdiction upon the District Courts of the United States, as courts of bankruptcy, (3) to "appoint receivers or the marshals, upon application of parties in interest, in case the court shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified;" (7) to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

This section, in connection with section 23, was before this court for construction in the case of *Bardes* v. *Hawarden Bank*, 178 U. S. 524, in which case it was held that section 23*b* of the act as it then stood prevented the courts of the United

States from entertaining jurisdiction over suits brought by trustees in bankruptcy to set aside fraudulent transfers of money or property made by the bankrupt to third parties before the institution of the bankruptcy proceedings, without the consent of the defendants. In that case it was held that the power conferred in subdivision 7 of section 2, above quoted, was limited by the direct provisions of section 23 as to the jurisdiction of suits brought by trustees, the effect of which section was to compel the trustee to resort to the state courts to set aside conveyances of the character named where an alleged fraudulent transfer had been made by the bankrupt before the beginning of the proceedings, unless jurisdiction in the District Court was by consent. This case, *Bardes* v. *Bank*, did not determine the right of the District Court to entertain jurisdiction of a proceeding having in view the adjudication of rights in or liens upon property which came into the possession of the bankruptcy court as that of the bankrupt; the right to proceed concerning which would seem to be broadly conferred in the section of the bankruptcy act above quoted. At the same term at which the *Bardes case* was decided, this court determined the case of *White* v. *Schloerb*, 178 U. S. 542. In that case it was held that, after an adjudication in bankruptcy, an action in replevin could not be brought in the state court to recover property in the posesssion of and held by the bankrupt at the time of the adjudication, and in the hands of the referee in bankruptcy when the action was begun, and that the District Court of the United States, sitting in bankruptcy, had jurisdiction by summary process to compel the return of the property seized. In the case of *Bryan* v. *Bernheimer*, 181 U. S. 188, it appeared that the bankrupt had made a general assignment for the benefit of his creditors nine days before the filing of his petition in bankruptcy, and the assignee sold the property after the bankruptcy proceedings had been begun, after the adjudication in bankruptcy, but before the appointment of a trustee. Upon petition of creditors the District Court ordered that the marshal take possession, and

the purchaser appear within ten days and propound his claim to the property, or, failing so to do, be declared to have no right in it. The purchaser appeared and set up that he bought the property in good faith from the assignee, and prayed the process of the court that the creditors might be remitted to their claim against the assignee for the price, or that same be ordered to be paid into court by the assignee and paid over to the purchaser who was willing to rescind the purchase upon receiving his money. It was held that the purchaser had no title to the bankrupt's estate, and that the equities between him and the creditors should be determined by the District Court, bringing in the assignee if necessary. In that case Mr. Justice Gray, who also delivered the opinion in the *Bardes case*, said:

"The bankrupt act of 1898, § 2, invests the courts of bankruptcy 'with such jurisdiction, at law and in equity, as to enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers, and during their respective terms'; to make adjudications of bankruptcy; and, among other things, '(3) appoint receivers or the marshals, upon the application of parties in interest, in case the courts shall find it absolutely necessary for the preservation of estates to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified;' '(6) bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy; (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided.' The exception refers to the provision of section 23, by virtue of which, as adjudged at the last term of this court, the District Court can, by the proposed defendant's consent, but not otherwise, entertain jurisdiction over suits brought by trustees in bankruptcy against third persons to recover property fraudulently conveyed by the bankrupt to them before the institution of proceedings in bank-

ruptcy. *Bardes* v. *Hawarden Bank,* 178 U. S. 524; *Mitchell* v. *McClure,* 178 U. S. 539; *Hicks* v. *Knost,* 178 U. S. 541."

This case (*Bryan* v. *Bernheimer*) would seem to limit the effect of the decision in the *Bardes case* to suits against third persons on account of transfers made before the bankruptcy, and to recognize the right of the bankruptcy court to adjudicate upon rights in property in the possession of the court belonging to the bankrupt. In the case of *Mueller* v. *Nugent,* 184 U. S. 1, this court recognized the power of the bankruptcy court to compel the surrender of money or other assets of the bankrupt in his possession or that of some one for him. In that case the decisions in *Bardes* v. *Hawarden Bank, White* v. *Schloerb* and *Bryan* v. *Bernheimer* were reviewed by the Chief Justice, who delivered the opinion of the court, and it was held that the filing of a petition in bankruptcy, is a *caveat* to all the world, and in effect an attachment and injunction, and that on adjudication title to the bankrupt's estate became vested in the trustee with actual or constructive possession, and placed in the custody of the bankruptcy court.

We think the result of these cases is, in view of the broad powers conferred in section 2 of the bankrupt act, authorizing the bankruptcy court to cause the estate of the bankrupt to be collected, reduced to money and distributed, and to determine controversies in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy, that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same and the extent and character of liens thereon or rights therein. This conclusion accords with a number of well-considered cases in the Federal courts. *In re Whitener,* 105 Fed. Rep. 180; *In re Antiago Screen Door Co.,* 123 Fed. Rep. 249; *In re Kellogg,* 121 Fed. Rep. 333. In the case of *First National Bank* v. *The Chicago Title & Trust Company,* decided May 8 of this term, *ante,* p. 280, in holding

that the jurisdiction of the District Court did not obtain, it was pointed out that the court had found that it was not in possession of the property. · Nor can we perceive that it makes any difference that the jurisdiction is not sought to be asserted in a summary proceeding, but resort is had to an action in the nature of a plenary suit, wherein the parties can be fully heard after the due course of equitable procedure.

It is insisted that in the present case the property was voluntarily turned over by the receiver, and thereby the jurisdiction of the District Court, upon the ground herein stated, is defeated, as the property is no longer in the possession or subject to the control of the court. But the receiver had no power or authority under the allegations of this bill to turn over the property. He was appointed a temporary custodian, and it was his duty to hold possession of the property until the termination of the proceedings or the appointment of a trustee for the bankrupt. The circumstances alleged in this bill tend to show that the transfer of the property was collusive, and certainly if the allegations be true, it was made without authority of the court. The court had possession of the property and jurisdiction to hear and determine the interests of those claiming a lien therein or ownership thereof. We do not think this jurisdiction can be ousted by a surrender of the property by the receiver, without authority of the court. Whether the rights of the claimants to the property could be litigated by summary proceedings, we need not determine. What we hold is that under the allegations of this bill the District Court had the right in a proceeding in the nature of a plenary action, in which the parties were duly served and brought into court, to determine their rights, and to grant full relief in the premises if the allegations of the bill shall be sustained. This view renders it unnecessary to consider the effect of the amendments of the bankruptcy act, passed February 5, 1903, broadening the power of the bankruptcy courts to entertain suits by trustees to set aside certain conveyances made by the bankrupt.

*Decree reversed.*