CLEMINSHAW v. INTERNATIONAL SHIRT & COLLAR CO. et al.

(District Court, N. D. New York. December 10, 1908.)

1. BANKRUPTCY (§ 293*) — JURISDICTION OF COURTS — SUIT TO ESTABLISH LIEN ON BANKRUPT'S PROPERTY.

Under Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), which vests District Courts as courts of bankruptcy with jurisdiction to "cause the estates of bankrupts to be collected, reduced to money and distributed and determine controversies in relation thereto," such a court has jurisdiction of a suit in equity to establish a lien upon property of a bankrupt the title to which has passed to his trustee and which is in the possession of such court for administration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 410, 411; Dec. Dig. § 293.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. BANKRUPTCY (§ 302*)—SUIT AGAINST TRUSTEE—SUFFICIENCY OF BILL.

A bill against a trustee in bankruptcy of a corporation which alleges facts showing that complainant was induced by the fraudulent representations of the bankrupt, through its officers having apparent authority, to release a mortgage on its property, and offers to restore the consideration received therefor, states a cause of action for equitable relief by a restora-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of the lien, the question of the intervening rights of creditors being one to be determined on the hearing.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 456; Dec. Dig. § 302.*]

In Equity.

This is a demurrer to the complaint in an action in equity brought to rescind a certain agreement, whereby certain bonds were surrendered and canceled, on the return of certain shares of stock of Curtis Leggett & Co., and to restore a certain mortgage, given to secure the said bonds, as a lien upon certain property owned by the bankrupt, Curtis Leggett & Co., at the time of the adjudication, and thus make such property, real estate, and certain personal property subject to the indebtedness represented by the bonds and secured by such mortgage. In substance and effect the action is brought to declare and create or restore a lien on the real estate and certain personal property of the bankrupt, Curtis Leggett & Co., the title to which is now vested in George A. Frisbie as its trustee in bankruptcy.

Van Santvoord & Wellington, for plaintiff.
William W. Morrill, for defendant Frisbie as trustee.
Thomas S. Fagan, for defendant International Shirt & Collar Co.

RAY, District Judge. Curtis Leggett & Co., a New York corporation, was adjudicated a bankrupt on or about November 9, 1907, and December 2, 1907, the defendant George A. Frisbie was duly appointed trustee of the bankrupt estate. On or about December 16, 1903, H. C. Curtis & Co., a New York corporation, duly executed a mortgage on its real estate and fixtures described in the complaint to a trustee, the Security Trust Company of Troy, N. Y., to secure the payment of an authorized issue of its bonds to the amount of $50,000, $48,000 of which were actually issued. Of those actually issued, $2,000 were thereafter actually paid and canceled. The mortgage was recorded in the county clerk's office of Rensselaer county, N. Y., on the 17th day of December, 1903, Book of Mortgages No. 302, p. 447. The bonds were of even date with the mortgage, December 16, 1903, and of the par value of $1,000 each. H. C. Curtis & Co. delivered 38 of these bonds to the plaintiff here, Charles Cleminshaw, and the complaint alleges that there are other holders of the balance of such bonds who are similarly situated with himself. May 29, 1906, Curtis Leggett & Co. made a proposition in writing to H. C. Curtis & Co. for the purchase of the entire property, rights, privileges, business, and franchises of the H. C. Curtis Company. The consideration proposed was 2,250 shares of the capital stock of Curtis Leggett & Co. of the par value of $100 per share and the assumption and payment of all the debts of H. C. Curtis & Co. A similar proposition was made by Curtis Leggett & Co. to the defendant International Shirt & Collar Company, also a New York corporation, to purchase its property, etc., paying therefor 5,250 shares of its said stock at the par value of $100 per share.

The bill of complaint alleges that it was the intention of both said selling corporations that the business of each should be transferred to and continued by Curtis Leggett & Co. Before H. C. Curtis & Co. and its stockholders accepted the offer of Curtis Leggett & Co., the

defendant International Shirt & Collar Company, by its officers and certain other persons, and Curtis Leggett & Co. and certain persons acting in its behalf, the same persons in the main who represented the International Shirt & Collar Company, falsely and fraudulently, and with the intent to defraud the plaintiff and stockholders of H. C. Curtis & Co., represented that the assets of the International Shirt & Collar Company were very largely in excess of its liabilities to its creditors and stockholders. These representations were false and known to be false when made. In fact, the assets of the International Shirt & Collar Company were not worth within several hundred thousand dollars of what they were represented to be worth.

The bill of complaint sets out these representations and their falsity, and the names of the officers and persons who made them and their authority in all necessary detail. The authority to make representations is alleged to have been the general authority to make the sales, and that therefore the persons making them were acting within their apparent authority in making even false representations as to the property. In reliance upon said representations, H. C. Curtis & Co. on the 15th day of June, 1906, executed and delivered to Curtis Leggett & Co., who accepted same, a conveyance of all its said real estate covered by the said mortgage, and also the personal property covered thereby and described therein, subject to such mortgage. Curtis Leggett & Co., as a part of the consideration for such conveyance, agreed to pay the mortgage and bonds therein referred to and thereby secured to be paid. Thereafter, and in 1906, Curtis Leggett & Co. increased its capital stock and reclassified the same. Its original issue of stock was all common stock.

The bill of complaint also alleges that relying on similar statements, which were false and fraudulent, made May 29, 1906, and September 6, 1906, by officers of the International Shirt & Collar Company, who were also officers of Curtis Leggett & Co., and false representations made by both said companies and by their officers, naming them and their official capacity, and made to plaintiff and others, that the assets of Curtis Leggett & Co. amounted to more than $1,000,000 in excess of all its debts and liabilities, the plaintiff and others were induced to surrender up and cancel their bonds secured by said mortgage, and to consent to a cancellation of such mortgage and bonds, and take in exchange therefor shares of preferred stock in Curtis Leggett & Co., which shares were in fact worthless and are still worthless, but which would have been worth par if such representations had been true.

The bill of complaint alleges that the plaintiff in doing what he did relied on such representations; was ignorant of their falsity and remained in ignorance until March 7, 1907; that he was not in a position to ascertain the actual and full truth, giving reasons why, until August, 1907.

The complaint proceeds to state that from time to time after March, 1907, the officers of Curtis Leggett & Co. falsely and fraudulently represented to the plaintiff that the assets of the company were more than sufficient to pay its debts, and more than sufficient to make its preferred stock worth par, even conceding the inventory of the assets of the

International Shirt & Collar Company was a fraudulent one; and also, as a further inducement to delay by plaintiff in bringing action, promised to make good any shortage in the assets of the International Shirt & Collar Company. Also, that in ignorance of the truth, "and to permit, if possible, Curtis Leggett & Co. to weather the extraordinary conditions in the money market that obtained during the summer of 1907, refrained from prosecuting his claim and refrained from instituting suit." In short, the complainant admits some delay in bringing the suit after he was partially informed of the fraud and deceit practiced on him in the first instance, but he also alleges that such delay was induced by further false and fraudulent representations as to actual conditions. These further false and fraudulent representations were to the effect that, even if some or all of the earlier ones were false, they occasioned complainant no damage.

The bill of complaint does not show that the rights of others have intervened, so that injury would result to innocent third parties should relief be granted the complainant. The trustee of Curtis Leggett & Co. represents its creditors, but it does not appear that these creditors became such on the strength of the ownership by that company of the property in question. What facts a trial will disclose in these regards is problematical. The demurrer of the defendant International Shirt & Collar Company presents the contentions that the bill on its face is without equity, fails to excuse delay in bringing the action, that the said company is not a proper or necessary party, and that this court has no jurisdiction of the subject-matter or of the person of such defendant. The demurrer of the trustee, Frisbie, presents some, but not all, of these contentions.

It seems to me clear that this court has jurisdiction. The title to the property sought to be charged with the lien of a mortgage is vested in the trustee, an officer of this court, and was at the time of the commencement of the action. This court has the charge and custody of the property, and common sense seems to indicate that, if any court is to charge it with a lien or permit it to be charged with a lien, this is the one. If the transaction in and by which the lien was canceled was fraudulent and voidable, may not this court at the suit of a party in interest so say? By section 2 of the bankruptcy act, "An act to establish a uniform system of bankruptcy throughout the United States," approved July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), amended February 5, 1903, c. 487, § 1, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1024), the District Courts are made courts in bankruptcy, and invested with such jurisdiction in law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, and to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto." I am very sure that this confers ample and plenary jurisdiction on this court to determine the question involved here.

Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157; Ex parte The City Bank of New Orleans, in Matter of William Christy, Assignee, etc., 3 How. 292, 312, 313, 11 L. Ed. 603. This is a plenary action in equity to determine whether or not complainant has a lien on the property, and the extent of it. As stated, the property is

now in the possession of this court, and is to be reduced to money and distributed by it. In Whitney v. Wenman, 198 U. S., at page 552, 25 Sup. Ct., at page 781 (49 L. Ed. 1157), the court held:

"We think the result of these cases is, in view of the broad powers, conferred in section 2 of the bankrupt act, authorizing the bankruptcy court to· cause the estate of the bankrupt to be collected, reduced to money and distributed, and to determine controversies in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy, that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same, and the extent and character of liens thereon or rights therein. This conclusion accords with a number of well-considered cases in the federal courts. In re Whitener, 105 Fed. 180, 44 C. C. A. 434; In re Antiago Screen Door Co., 123 Fed. 249, 59 C. C. A. 248; In re Kellogg, 121 Fed. 333, 57 C. C. A. 547."

In Minnesota Co. v. St. Paul Co., 2 Wall. 609, 632, 17 L. Ed. 886, the court held that:

"Where a court of equity has taken possession of property for any reason, and has placed it in the custody of receivers, sequestrators, or custodians, it will maintain its possession of such property, and will determine all rights with respect thereto," etc.

If the allegations of the complaint are broadly true, a cause of action is stated, and the bill is not devoid of equity. Broadly stated, if a man is deprived of his property, or is induced to surrender a lien thereon by materially false and fraudulent representations upon which he relies, he may, on restoring what he has received, or on offering to restore, or on being able, ready, and willing to restore, be placed in his original position so far as possible, and so far as restoration will not interfere with the rights of innocent third persons. It may be that the rights of general creditors in this case are such that relief cannot be granted the complainant. I do not think it was incumbent on the complainant to negative possible conditions which would prevent the granting of equitable relief. The rights of the general creditors and of the trustee, as against the complainant, depend upon many things. I am pointed to no case holding that, in a case like this, the complainant must negative possible defenses. Wallace v. Hood (C. C.) 89 Fed. 11, was the case of an action by the receiver of a national bank to enforce an assessment against a stockholder for the benefit of its creditors. Scott v. Abbott, 20 Am. Bankr. Rep. 335, 160 Fed. 573, 87 C. C. A. 475, is in some respects quite different from this case, but it will be for the court to pass on the equities as between the complainant and general creditors when all the facts appear.

As to laches, the complainant sets out many facts explaining and excusing his delay in bringing suit. I am not prepared to hold as matter of law or fact that the delay is not sufficiently excused. The sufficiency of the excuse is better determined on the trial when all the facts and surrounding circumstances are before the court. It will be material to know whether or not the delay has prejudiced any one. It will be material to know the amount of the general indebtedness of Curtis Leggett & Co., and the times when such indebtedness was incurred. It is to be remembered that H. C. Curtis & Co. owned the

165 F.—51

real estate in question, executed the mortgage, and issued the bonds. Cleminshaw took $38,000 of these bonds, and claims he was induced to surrender them and consent to a cancellation of the mortgage by the fraud of Curtis Leggett & Co., a then existing corporation. For anything that appears, the present general creditors of Curtis Leggett & Co. were its creditors at that time.

It must be conceded that there is more or less confusion in the allegations of the complaint, but, accepting the allegations of fact as true, I am of the opinion that a case for equitable relief is stated.

The demurrers are overruled, without costs, and the defendants may answer within 20 days.