### PLAUT v. GORHAM MFG. CO. et al.

#### (District Court, S. D. New York. June 15, 1909.)

**1. COURTS (§ 280*)—FEDERAL COURTS—JURISDICTION.**

It is not sufficient that a complaint alleges facts showing federal jurisdiction, but such facts must be established by evidence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818; Dec. Dig. § 280.*]

**2. BANKRUPTCY (§ 292*)—LEASE—TERMINATION—ACTION BY TRUSTEE.**

Where a lease on the premises occupied by the bankrupt was terminated by a warrant of dispossession issued at least four days before the receiver in bankruptcy was appointed, and after the receiver took possession he appeared and announced in open court that he had finished the business and disposed of the bankrupt's assets contained in the premises, and made no objection to the dissolution of an injunction restraining the landlord from interfering with his possession, the bankrupt had no lease which could be an asset of his estate in bankruptcy, nor had the receiver either wrongfully parted with or been deprived of the premises by force of the warrant to dispossess; and hence the federal court had no jurisdiction of an action by a trustee to establish the lease as an asset of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 410; Dec. Dig. § 292.*]

**3. LANDLORD AND TENANT (§ 202*)—LEASE—CONSTRUCTION—PAYMENT IN ADVANCE.**

Where a lease was silent as to the time of payment of rent, the rent would ordinarily be payable at the end of the month; but where, for a period of six months, the rent had been paid in advance, the parties would be held to have given the lease a contemporaneous construction to require advance payment.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 802–806; Dec. Dig. § 202.*]

**4. JUDGMENT (§ 652*)—CONCLUSIVENESS—DISPOSSESSION PROCEEDINGS.**

A default judgment in dispossession proceedings for alleged nonpayment of rent establishes that the rent was due at the time proceedings were instituted.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1164; Dec. Dig. § 652.*]

**5. COURTS (§ 189*)—MUNICIPAL COURTS—PROCEDURE—APPEARANCE BY ATTORNEY.**

Where a tenant against whom dispossession proceedings were instituted in a New York City Municipal Court appeared by attorney and never at

———————
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

any time asserted that the attorney was not authorized to appear. but recognized the attorney's acts by sending to him checks with which to pay rent still due, such appearance waived the insufficiency of service of the precept.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 189.*]

**6. LANDLORD AND TENANT (§ 116*)—DISPOSSESSION PROCEEDINGS—JUDGMENT—LEASE—TERMINATION.**

A judgment for the landlord in dispossession proceedings on which a warrant was duly issued requiring a surrender of the premises for nonpayment of rent constituted a termination of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 116.*]

**7. LANDLORD AND TENANT (§ 213*)—PAYMENT OF RENT—CHECK.**

A tenant's check for rent received for collection only was not payment thereof.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 852; Dec. Dig. § 213.*]

**8. BANKRUPTCY (§ 101*)—ADJUDICATION—APPOINTMENT OF TRUSTEE.**

From a bankrupt's adjudication until the appointment of a trustee the bankrupt is not to be regarded as civilly dead.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 101.*]

**9. BANKRUPTCY (§ 196*)—JUDGMENT—LIEN—DISPOSSESSION.**

A judgment dispossessing a bankrupt as a tenant prior to his adjudication in bankruptcy did not create a lien on his estate within Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3450]) § 67f, declaring that all liens obtained through legal proceedings against the bankrupt at any time within four months prior to the filing of the petition shall be void.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 306–316; Dec. Dig. § 196.*]

Action by Isaac S. Plaut, as trustee in bankruptcy of Solomon Rothschild, bankrupt, against the Gorham Manufacturing Company and others. Decree for defendants.

Myers & Goldsmith (Emanuel J. Myers, of counsel), for complainant.

George Carleton Comstock (J. Noble Hayes, of counsel), for defendants.

HOLT, District Judge. This action is brought by Isaac S. Plaut, as trustee in bankruptcy of Solomon Rothschild, bankrupt, against the Gorham Manufacturing Company and others to recover, as an asset of the estate, a lease made by the Gorham Manufacturing Company to the bankrupt of the premises 384 Fifth avenue, New York, dated January 16, 1906, for a term of 21 years, at an annual rental of $35,000 a year, payable monthly. Rothschild, the tenant, went into possession of the premises under the lease, and paid the rent monthly in advance until and including the month of June, 1906. On July 19, 1906, no rent for July having been paid, the Gorham Manufacturing Company instituted a proceeding on a petition in a Municipal Court of the city of New York to dispossess the said Rothschild for the nonpayment of rent, and to recover possession of the premises and terminate the lease. A precept was issued directed to the said Rothschild, requiring him to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

remove from the premises or show cause before the Municipal Court before the 24th day of July, 1906, and was served on July 19th by leaving a copy of the same at Rothschild's place of business with a person in charge. Rothschild thereupon employed the firm of Davis & Kaufman as his attorneys to represent him in the proceeding. On July 23, 1906, the day before the precept was returnable, Davis & Kaufman applied to the firm of Olney & Comstock, the attorneys for the Gorham Manufacturing Company in the proceeding, and requested them to sign a stipulation adjourning the proceeding to July 26, 1906, reserving the right of the tenant to interpose any objection or answer or show cause to the precept returnable on the 24th day of July. Messrs. Olney & Comstock declined to adjourn the proceeding generally, but agreed to withhold the issuance of a warrant until July 26th, and accordingly struck from the proposed stipulation the words which granted the right to the tenant to interpose any objection or answer or show cause to the precept, and interlined the words "pay rent called for by precept returnable," so that the stipulation as finally signed by the attorneys for the respective parties read as follows:

"It is hereby consented that Solomon Rothschild the tenant in the above-entitled proceeding, had until Thursday, July 26th, 1906, in which to pay rent called for by the precept returnable the 24th day of July, 1906, at 9 'o'clock in the forenoon."

On July 24th, the original return day of the precept, Messrs. Olney & Comstock appeared in the Municipal Court, filed the stipulation, and had a final order dispossessing the tenant for nonpayment of rent signed by the magistrate, but withheld the issuance of the warrant until July 26, 1906. On July 26th Messrs. Davis & Kaufman applied to Messrs. Olney & Comstock, asking them if they would accept the rent if they sent the money down the next day, the 27th. Messrs. Olney & Comstock replied that they would, but that they would get out the warrant in the meantime. They thereupon directed their clerk to stop at the office of the Municipal Court on the morning of the following day, and get the warrant, and he did so. During the 27th, checks for the amount of the rent were sent by Davis & Kaufman to Olney & Comstock. Mr. Comstock testifies that he left town on the 27th, which was Friday, and did not return until the succeeding Monday, the 30th; that he told his clerk not to accept checks in payment of the rent, but only money. After Mr. Comstock had left the office, late in the afternoon of the 27th, checks for the amount of the rent were brought to Mr. Comstock's office by Mr. Davis. The clerk said that his instructions were to take money only. Mr. Davis suggested that he take the checks and give a receipt for them until Mr. Comstock returned, and the clerk did so. Upon Mr. Comstock's return on Monday, the 30th, he had a conversation by telephone with Mr. Kaufman, and said that he found the checks in his office upon his return, and that he would not accept anything but money in payment of the rent. The checks were drawn by Mr. Rothschild to the order of Mr. Kaufman, and indorsed by the latter. Mr. Comstock asked Mr. Kaufman if he meant by the indorsement to guarantee the payment of the checks. Mr. Kaufman answered that he did not, that he was merely acting for Mr. Rothschild as an attorney, and a mere conduit for the checks.

Mr. Comstock then informed him that he would send the checks back, but Mr. Kaufman requested Mr. Comstock to take them for collection, to which Mr. Comstock replied that, if his client was willing to accept them for that purpose, he would have no objection, and, if they were so received and paid, they would be accepted in payment, but, if not, they would be treated as a nullity. Mr. Comstock thereupon sent the checks to the office of the Gorham Manufacturing Company at New York. Mr. Holbrook, the president of the company, was in Providence. Mr. Spencer, the financial official of the company at New York, refused to deposit the checks, and referred Mr. Comstock to Mr. Holbrook. Mr. Comstock went to Providence that afternoon, and saw Mr. Holbrook, and Mr. Holbrook directed that the checks be deposited, and that, if paid, the rent would be accepted, and, if not, not. These instructions were given on July 31st, and the checks were put in the bank for collection on August 1st. On that day, at 9:15 a. m., an involuntary petition in bankruptcy was filed against Rothschild. None of the checks was paid. One was returned indorsed "Insufficient funds," and the others indorsed "Bankruptcy proceedings pending." On the same day Mr. Charles C. Burlingham was appointed receiver, and qualified as such. He thereupon went to the leased premises, took possession of the property of the bankrupt there, and occupied the premises until September 7, 1906. At the same time, an injunction was issued restraining the Gorham Manufacturing Company and all other persons from interfering with the receiver, and on August 7, 1906, an order was obtained requiring the Gorham Manufacturing Company to show cause why it should not be restrained from prosecuting the dispossess proceedings, which order contained a temporary injunction to that effect. This order, after several adjournments, came on for hearing on September 7, 1906. On the hearing, the receiver's counsel stated that he had discontinued the business of the bankrupt upon the premises, and had sold the stock and merchandise of the bankrupt at public auction, and thereupon an order was made denying the motion for a further stay contained in said order to show cause of August 7, 1906. Thereupon the Gorham Manufacturing Company went into possession of the said premises, and continued in such possession until November or December, 1906, when it leased the said premises to the defendant Adelbert Jaeckel, who has been in possession ever since. The plaintiff was appointed trustee in bankruptcy on October 16, 1906. He thereafter, claiming that the lease was an asset of the estate to which he was entitled, tendered the amount of the rent in arrears, and demanded possession of the premises, which was refused. He thereupon brought this suit.

The first question in this case is whether the facts proved show that this court has jurisdiction. The complaint alleges, in substance, that the receiver took possession of the lease and of the premises thereunder, and that he was dispossessed under the warrant of dispossession, which complainant claims was issued without jurisdiction. On demurrer I held that these allegations made out a case which conferred jurisdiction upon this court under the doctrine of the case of Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157. But it is not enough that a complaint alleges facts showing jurisdiction in a

federal court. The evidence must establish such facts. It is necessary, in order to bring this case within the reasoning of Whitney v. Wenman, to show that the receiver was in possession of the asset claimed, and that he wrongfully parted with it or was deprived of it. In the first place, I do not think that the evidence establishes that the receiver was ever in possession of the lease. He went into possession of the premises which had been leased, and of the physical assets of the bankrupt which were situated in said premises; but if the lease and all the rights of the tenant under it had been terminated by the issuance of the warrant of the Municipal Court on July 26th, four days before the receiver was appointed, the tenant had no lease, and it was not an asset of which the receiver could take possession. Moreover, assuming that he did take possession of the lease by the fact that he took possession of the premises, and occupied them for about a month, the evidence does not establish that he either wrongfully parted with them, or was deprived of them by the force of the warrant to dispossess. He appeared in open court, announced that he had finished the business, and disposed of the assets of the bankrupt contained in the premises, and made no objection to a vacation of the injunction. The court thereupon made an order vacating the injunction. Instead, therefore, of the receiver being dispossessed by the operation of the dispossess warrant, he voluntarily vacated the premises, and his action in doing so was authorized by the court. Under such circumstances, I cannot see that he wrongfully parted with property or was wrongfully deprived of property by the defendants. Therefore I do not see that this court has any jurisdiction in this case.

This conclusion makes it strictly unnecessary to consider the case upon the merits, but, as an appeal may be taken, and the court on appeal may hold that this court had jurisdiction, and as it is desirable that this elaborate and expensive litigation, if an appeal is taken, should come before the appellate court in such a form that it may be finally disposed of, I will briefly state the conclusions at which I have arrived on the merits.

It is claimed that the dispossess warrant issued by the magistrate was issued without jurisdiction, and that therefore it is void. This claim is based on the proposition, as I understand it, that the rent, by the terms of the lease, was not payable in advance, and therefore no rent was due when the proceeding was begun; that the service of the precept, when made, was not made upon Rothschild personally, but was made by being left at his place of business; and that the original defect in the service was not cured by the appearance of Davis & Kaufman as attorneys for the bankrupt, on the ground that attorneys, as such, are not officers of courts of justices of the peace, and, if they appear for a litigant in such a court, must prove that they have authority to appear by the provisions of the statute relating to such courts.

The question whether the rent was payable in advance is a question of fact. Rothschild, in fact, had paid it, and the Gorham Manufacturing Company had received it, in advance, at the beginning of each of the six months which had elapsed after Rothschild went into possession. The contemporaneous construction of the parties therefore was that the rent was payable in advance. The lease was silent on the sub-

ject of the time of payment, and probably, under the authorities, in the absence of evidence of any other circumstances, it would be held that the rent was payable at the end of the month. But the question from any point of view is purely one of fact, and the judgment of dispossession, if otherwise valid, established the fact that the rent was due. A judgment by default establishes such a fact in the same way as any other judgment. The fact that the service of the precept was made, not upon Rothschild personally, but upon a person in charge at his place of business, appears, under the statute, to have been insufficient service, but no objection to the service was made by Rothschild, and he appeared in the proceeding by Davis & Kaufman as his attorneys. But it is said that the Municipal Courts of the city of New York are substantially the same as the courts of justices of the peace; that attorneys at law, being officers of courts of record, and not of courts of justices of the peace, if they appear for a party in such a court, must furnish proof that they have authority to appear for him. Various cases are cited in which it has been held that such authority must be proved. These authorities all seem to be cases in which the defendant has asserted that an attorney who appeared for him in a justice's court had no authority to appear. In this case Rothschild never asserted that Davis & Kaufman had no authority to appear for him. He recognized that they were acting as his attorneys by sending to them the checks with which to pay the rent which was due. Moreover, it may be questioned whether the rule applicable to country courts of justices of the peace applies to Municipal Courts in this city. In ordinary practice it would certainly be considered an extraordinary proposition by most New York lawyers that a party was not bound by an appearance of reputable attorneys in a Municipal Court of the city of New York unless such attorneys had proved by oath that they were authorized to appear. If such proof is necessary in any case in a Municipal Court, it must be in my opinion in a case in which the party represented by the attorney repudiates his authority, and asserts that he never acquiesced in the attorney's appearance. In my opinion, none of the grounds upon which it is claimed that the magistrate's order dispossessing the tenant was without jurisdiction is valid. I think that the judgment of dispossession, shown either by the signing of the order for the warrant on July 24th, or certainly by the issuance of the warrant on July 26th, was a valid judgment, which terminated the relation of landlord and tenant between the Gorham Manufacturing Company and Rothschild, and that, when the receiver was appointed upon August 1st, the lease of the premises was not an asset of the bankrupt which could be taken possession of by the receiver or by the trustee.

But it is claimed that the landlord waived the provisions of the judgment of dispossession by receiving the checks in payment. If, in fact, no bankruptcy had intervened, and the checks had been paid, and the landlord had acquiesced in Rothschild's continuing in possession of the premises, and had accepted rent subsequently from him, Rothschild would have continued to occupy the premises in accordance with the terms of the lease. Logically, the lease having once been absolutely terminated, it might be claimed that any subsequent reten-

tion of the premises was not strictly under the lease, but was a use and occupation upon an implied lease or agreement, the terms of which would be similar to that of the original lease; but whether it be considered that the judgment would be waived, and the lease actually continued, or that theoretically it was a case of use and occupation, is an immaterial academic question. The checks, in fact, were not paid, and there was no agreement to receive them as payment. The receipt given for them was a receipt for the checks, and not for the rent. The conversations between Mr. Comstock and Mr. Kaufman, the fact that the New York manager of the Gorham Manufacturing Company refused to take the responsibility of depositing the checks, and that Mr. Comstock went to Providence and consulted with Mr. Holbrook on that subject before they were deposited, the fact that by the conversations between Mr. Comstock and Mr. Kaufman, the evidence of which is entirely uncontradicted by Mr. Kaufman, it was agreed between them that the checks should not be taken as payment, but should be taken for what they were worth, all tends to show that the ordinary rule applies in this case that the acceptance of checks does not constitute payment, in the absence of a specific agreement to that effect. The fact that they were endorsed by Mr. Kaufman does not change the general rule, especially in view of the uncontradicted testimony that it was agreed between Mr. Comstock and Mr. Kaufman that Kaufman's endorsement was merely as a means of transferring the checks to the Gorham Manufacturing Company, and that Mr. Holbrook was informed of that fact, and took the checks upon that understanding. A check is nothing but a piece of paper. It is not money. Under the general rules of law, its acceptance is presumably not payment.

The complainant's counsel argues that from the time of the adjudication until the appointment of a trustee the bankrupt is civilly dead, and that nothing that takes place in the meantime can deprive the trustee of his right to elect whether to accept any asset of the bankrupt or not. If that doctrine were true, the court would have no power to authorize any action whatever in respect to the assets of the estate until the trustee was appointed. It could not order a sale; it could not permit a delivery of property admitted not to belong to the bankrupt; it could not permit a business to be carried on. The adjudication would strike the estate with a complete paralysis until the necessary weeks or the usual months had passed before the appointment of the trustee. There is nothing in the bankrupt act which authorizes such a conclusion.

It is also claimed that the judgment of dispossession having taken place when the bankrupt was insolvent, and within four months of his bankruptcy, is null and void, under the provisions of section 67f of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3450]), which provides that:

"All levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt."

But the judgment of dispossession did not create a lien upon the bankrupt's estate. "A judgment or decree in enforcement of an other-

wise valid pre-existing lien is not the judgment denounced by the statute which is plainly confined to judgments creating liens.  * * * Moreover, other provisions of the act render it unreasonable to impute the intention to annul all judgments recovered within four months." Metcalf v. Barker, 187 U. S. 174, 23 Sup. Ct. 71 (47 L. Ed. 122). The proposition that every judgment for the issue of a warrant to dis possess a tenant for the nonpayment of rent becomes null and void by the subsequent bankruptcy of the tenant within four months, upon proof that at the time the judgment was obtained the bankrupt was insolvent, is, in my opinion, entirely unwarranted by the provision of the act in question.   Such a doctrine would render all decrees for the foreclosure of mortgages or liens of any kind liable to be held null and void under similar circumstances.

My conclusion is that this court has no jurisdiction of this case, and that, if it had jurisdiction, there should be a decree for the defendants upon the merits.