## In re BARNES GEAR CO.

### Petition of NEW YORK AIR BRAKE CO.

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

No. 194.

**Bankruptcy ⟗154—Petitioner, by obtaining order for his benefit, submits to summary jurisdiction for its enforcement.**

Where at the time of its bankruptcy a corporation was engaged in manufacturing certain articles under a contract, the other party to the contract, by presenting a petition in the proceedings, alleging that it would suffer serious loss by delay, and obtaining an order permitting it to take possession of the completed articles and materials on hand, on condition that it pay for the work done as soon as the amount could be ascertained, thereby submitted itself to the jurisdiction of the court to enforce such condition by summary order, and could not insist on a plenary action, in which it could litigate a counterclaim.

Petition to Revise Order of the District Court of the United States for the Northern District of New York.

In the matter of the Barnes Gear Company, bankrupt. Petition by the New York Air Brake Company to revise order of District Court. Affirmed.

For opinions below, see 251 Fed. 764, and 259 Fed. 320.

Frederick M. Boyer, of Watertown, N. Y., for petitioner.

Geo. Noyes Burt, of Oswego, N. Y. (Harry C. Mizen, of Oswego, N. Y., of counsel), for respondent.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The Barnes Gear Company, of Oswego, N. Y., made a contract with the New York Air Brake Company on April 5, 1916, for the performance of work and labor in the machining of 100,000 fuse bodies upon terms agreed upon in the contract. About $18,794.84 worth of material was furnished by the air brake

company, tools were furnished by the gear company, and work thereon performed.

A petition in involuntary bankruptcy was filed against the Barnes Gear Company on June 5, 1917, and a receiver, the present trustee, was appointed. The receiver operated the plant of the bankrupt until July 5, 1917. The contract of the petitioner was breached. The petitioner then endeavored to obtain possession of the materials and the process for machining, and, together with the counsel for the receiver, appeared before the District Judge in an application for an order to turn over such materials to petitioner. The order provides:

"It is ordered, that the said receiver be and he is hereby authorized and directed forthwith to deliver on demand to said air brake company, the petitioner, the materials, tools, etc., as shown by the schedules annexed to said petition, and that all other matters arising out of a certain contract dated April 5, 1917, between the New York Air Brake Company, the petitioner, and said bankrupt, be held and reserved subject to the further order of this court.

"If the property referred to in this order is delivered over to and taken possession of by the New York Air Brake Company, it shall have 15 days within which to inspect the same, for the purpose of ascertaining the character and quality of the work done thereon by the now bankrupt company, and whether acceptable or not under the terms of the contract existing between said air brake company and the now bankrupt. If any of such work is rejected by the air brake company as not in substantial compliance with the contract, such work or pieces of work shall be segregated, and immediate notice given of such rejection, and the receiver of the now bankrupt shall have 10 days thereafter, or 30 days from this date, in which to confer with the air brake company or its representatives, and adjust any differences or contentions that may exist with reference to the quality, character, and value of such work.

"Further ordered that all work accepted within the said 20 days is to be paid for within 5 days from the time the amount due for such work has been determined, and all not accepted within said 20 days, but thereafter accepted, for within 5 days after the determination of the amount due therefor."

In November, 1917, the petitioner and respondent agreed that the value of the work performed by the bankrupt on petitioner's material was worth $4,461.65. This amount having been agreed upon, it became payable under the terms of the order of July 26, 1917, within 5 days thereafter. The order of July 26, 1917, was granted on petition of the New York Air Brake Company. After the failure to pay, within 5 days, the amount so found to be due, an order to show cause, based upon the order of July 26, 1917, why this sum should not be paid, was then obtained by the respondent, and after hearing on March 6, 1918, an order was entered directing the petitioner to pay this sum. A rehearing was granted, and, after argument, the order now sought to be revised was entered, which directs payment of said sum of money. This, a petition to revise, brings up for review only questions of law. It is admitted that there was due and owing, pursuant to the terms of the order of July 26, 1917, $4,461.65.

The contention of the petitioner is that it has a claim for breach of contract against the bankrupt, and that it should have an opportunity in this proceeding to set up and litigate its claim for damages for this breach and this counterclaim against the bankrupt. It contends that the respondent should pursue his remedy in a plenary action, and that

the court has not the power to grant relief in this summary proceeding. The difficulty, however, in this position of the petitioner, is that it invoked the aid of the District Court, obtaining some benefit in the immediate turn-over of its property upon which the bankrupt was performing service, and that upon a condition imposed to pay the amount due for the work performed. It now wishes to avoid the terms of the order under which it accepted these benefits. The order was entered by mutual agreement and it was considered to the mutual benefits of both litigants.

The petition itself alleged that the brake company had a large contract with the British government for munitions, this being a part of the work covered by its contract with the British government; that the brake company was in default on its contract and had been granted a 60-day extension by the British government; that by reason of the failure of the bankrupt, and its consequent inability to perform its contract, the petitioner was or would be damaged; that the petitioner had furnished material to the bankrupt of the value of $18,794.84, and this material was to be worked and improved for the consideration set forth in the contract between it and the brake company; that $4,000 was on deposit with the petitioner for the faithful performance of the contract; that all of the material was in the actual possession of the receiver; that some of it was completed, and some partially completed; that the brake company would be unable to complete its contract with the British government unless it immediately secured possession of this material and that the bankrupt had ceased operations under the contract. From this it conclusively appears that the petitioner could complete its contract with the British government, if it speedily received relief and was not compelled to await the outcome of the involuntary proceedings then pending and undetermined and the appointment of a trustee. In the prayer for relief, it said:

"Your petitioner further shows that considerably less than one-fourth in amount of said labor has been performed under said contract, for which labor your petitioner is ready and willing to pay said bankrupt, or its receiver or trustee, at any time upon the order of this court; that it will be impracticable for said brake company, your petitioner, to procure this material to be properly inspected and passed upon in accordance with the terms of said contract, but that said inspection can be had immediately upon delivery of said partially completed pieces at its plant at Watertown, N. Y."

From the foregoing proceeding, it is clear that the petitioner instituted this proceeding in bankruptcy. By its petition it became a party thereto, and submitted all its rights to the bankruptcy court for determination. It accepted the benefits derived from the order of July 26, 1917, as well as the condition imposed to pay the amount found to be due. It chose its own proceedings to obtain relief, and the bankruptcy court in which it instituted it. It cannot now be heard in a plea that it wishes to have its counterclaim heard in a plenary action. After the amount was found to be due, the District Court had jurisdiction to direct its payment within 5 days. But for this submission to the jurisdiction of the bankruptcy court, the petitioner had the right to set off its damages against any claim of the bank-

rupt for work done by it in a plenary action. Its petition was a proceeding in bankruptcy, and the controversy was one arising out of the settlement of the estate. First Nat. Bank v. Chicago Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051.

This is not a controversy between the trustee and a third party, as argued by the petitioner, nor is the petitioner a stranger to the bankruptcy proceeding. Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157. The material in question was in the lawful custody, control and possession of the receiver. Upon the petitioner filing its petition in the District Court, and asserting the fact that there was a lien thereon, and submitting the determination of the extent of the lien to the bankruptcy court's jurisdiction, there existed jurisdiction to determine the facts in the controversy in relation to the property and its disposition, the extent, the character, and amount of the liens thereon, the rights therein, and to the adjustment of the same.

The order is affirmed.