## In re LOGAN.

### (District Court, N. D. New York. May 27, 1912.)

1. BANKRUPTCY (§ 224*)—JURISDICTION OF COURT—ADVERSE CLAIMS—SUMMARY PROCEEDINGS.

On petition of a trustee, an order was issued by a referee and served on the bankrupt, his wife, and a woman who was not a party to the bankruptcy proceedings to show cause why the latter should not be required to convey to the trustee a farm, the title to which had been conveyed to her more than four months prior to the bankruptcy by another who was not a party to the proceedings, together with certain personal property thereon. The parties appeared, and were examined before any objection was made to the jurisdiction. The referee found from such examination that all of the property in question was and had been since prior to the filing of the petition in the actual possession of the bankrupt who was the actual owner; that it was caused to be conveyed to the woman who held the legal title as his agent through collusion and to defraud his creditors; that she had no interest therein, and had never asserted any as against the bankrupt prior to the bankruptcy. *Held*, that the referee had jurisdiction to make such findings, and, there being evidence to sustain the same, to make an order requiring the respondents to convey the property, both real and personal, to the trustee, and surrender possession to him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 383; Dec. Dig. § 224.*]

2. BANKRUPTCY (§ 212*)—JURISDICTION OF COURT—ADVERSE CLAIMS.

The test of jurisdiction of a court of bankruptcy by a summary proceeding to determine controversies in regard to real or personal property is possession of such property by the bankrupt at the time of the filing of the petition and adjudication, and the court has jurisdiction to determine such question of possession as a preliminary one. On a finding, warranted by the facts, that the bankrupt was in possession and was the true owner, jurisdiction to require the property to be turned over to the trustee is not defeated by a claim of ownership by a third person, asserted for the first time after the bankruptcy, even though the foundation for such claim, by vesting the legal title in such third person, had been prepared beforehand; and it is immaterial that the conveyance was made more than four months prior to the bankruptcy and by a person other than the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 236; Dec. Dig. § 212.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

In Bankruptcy. In the matter of Jacob Logan, bankrupt. On review of order of referee. Affirmed in part, and reversed in part.

Review of order of referee in bankruptcy, which order directs Jacob Logan, the bankrupt, and Jane Logan, his wife, and one Grace Tompkins, to execute and deliver to A. H. Abel, as trustee in bankruptcy, a conveyance of a certain farm in Laurens, Otsego county, N. Y., and a bill of sale and possession of certain property thereon, and to de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

liver the possession of such real estate and personal property to the said trustee, and also directing Jane Logan to deliver a certain promissory note of $2,000 made by said Grace Tompkins to said Jane Logan to the trustee.

Franklin C. Keyes, of Laurens, N. Y., for Jacob Logan, Jane Logan, and Grace Tompkins.

Vere H. Multer, of Binghamton, N. Y., for trustee.

RAY, District Judge (after stating the facts as above). [1] July 24, 1911, Jacob Logan filed in this court his petition in voluntary bankruptcy, and the next day he was adjudicated a bankrupt accordingly. August 15, 1911, at the first meeting of creditors, A. H. Abel was appointed trustee. October 6, 1911, an order granted by the referee on the petition of the said trustee was served on said Jacob Logan, Jane Logan, his wife, and Grace Tompkins, requiring them to show cause why they should not convey certain real estate and certain personal property thereon to the trustee, and also surrender or deliver possession thereof to him on the claim that all such property belonged to the bankrupt and was in his possession. November 8, 1911, all the parties appeared before the referee, said Logans and Tompkins being represented by Mr. Keyes, their attorney, and without objection to the jurisdiction or power of the referee evidence was taken, and Mr. and Mrs. Logan and Miss Tompkins were sworn and examined and cross examined. December 13, 1911, and while the proceeding was pending and undetermined, Mr. Keyes, in behalf of Mr. and Mrs. Logan and Miss Tompkins and as their attorney, filed with the referee objections in writing to the further prosecution of such proceedings, and to the making of the order or orders prayed for, and denying the jurisdiction and power of the referee to make any such determination or order, viz.:

"Now come the respondents Jane Logan and Grace Tompkins, by Franklin C. Keyes, their attorney, and specifically object to the power of the referee to order the respondents, or either of them, to turn over the property sought to be recovered by the trustee. Arthur H. Abel, or to grant the relief prayed for in the petition filed in this proceeding, and object to the jurisdiction of the court to proceed summarily in this matter. And respondents set up a claim adverse to that of the trustee to the property sought to be recovered and claim absolute title thereto for a valuable consideration, and assert that they are bona fide holders thereof for value prior to the adjudication in bankruptcy in the matter of Jacob Logan, bankrupt."

These objections were based on the evidence taken and before the referee. No other answer to the petition was filed. These objections were not verified by any one. On the 25th day of March, 1912, the referee made the order under review which directs the said Jacob and Jane Logan and Grace Tompkins to execute and deliver conveyances of such real estate and personal property to said trustee, and to deliver the possession thereof to him, and also directing Jane Logan to deliver a certain promissory note of $2,000 made by Grace Tompkins to the order of said Jane Logan. This order was served on the 26th day of March, 1912, and conveyances tendered for execution.

This demand has not been complied with, but proceedings for a review of the order were at once taken.

The referee found that Logan and wife and Miss Tompkins formerly resided in Pennsylvania, where Jacob Logan owned certain real estate and personal property which was disposed of or traded, so that the proceeds went into certain real estate in Lestershire or Binghamton, N. Y., in the names of Logan and his wife, and this was disposed of and deeded, and such property or its proceeds delivered to Gaylord Gibson, who deeded the farm in question to said Grace Tompkins more than four months before the filing of the petition in bankruptcy in consideration thereof, and that all was done under such circumstances as to show that the transactions were a mere cover for placing the property of Jacob Logan in the hands of said Grace Tompkins temporarily and until said Logan should be discharged in bankruptcy from his debts, when it is to be turned back to him, and that she holds title as a trustee or agent for Logan; that no consideration was paid by said Grace Tompkins, and that she has not been, and is not, in possession of this farm, and personal property, but that, immediately on Miss Tompkins taking title from Gibson, the bankrupt, Jacob Logan, and Jane Logan, his wife, went into possession and occupation; and that Jacob Logan now has actual possession thereof, and did at the date of bankruptcy. The referee finds, and the evidence will sustain, the finding that the property of Logan, the bankrupt, owned by him in Pennsylvania was put into the Lestershire and Binghamton property, and then into the farm in question, so that the proceeds of Logan's property are traced directly into the farm in question. Grace Tompkins put a mortgage of $500 on the farm, and with the money purchased the personal property in question, except the note. The deed from Gibson, who had the title to the farm, vested such title of record in Grace Tompkins. The question of possession was a disputed one before the referee, as was the question whether or not a consideration was paid by Grace Tompkins for the farm, etc. The evidence would have justified a finding of fact that Grace Tompkins is in the legal as well as actual possession of the farm, etc., and that she did pay a valuable consideration by surrendering valid claims she held against Logan, the bankrupt. This was the contention of Miss Tompkins and of Mr. and Mrs. Logan. I assume the findings of the referee that no money or property was paid or valuable thing surrendered as a consideration for the farm in question, and that Logan himself was in the actual occupancy and physical possession of both farm and personal property at the time of the filing of the petition in bankruptcy, are correct and fully sustained by the evidence. The conveyance of the farm to Grace Tompkins by deed duly recorded was made more than four months prior to the filing of the petition in bankruptcy, and the mortgage thereon was given and the personal property purchased with the proceeds more than four months prior to the bankruptcy. Under the findings of the referee, the transaction of Logan and wife and Miss Tompkins were clearly in fraud of creditors. Assuming that in a plenary suit by the trustee to set aside the transfer of the farm to Grace

Tompkins and certain other conveyances used as a means for placing this property in her hands, etc., the evidence and findings should be the same, the same result in the end would be reached as was arrived at by the referee. The question is, Did the referee have power and jurisdiction in this summary proceeding and in this summary way and in the absence of objections until the evidence was in, and in the absence of an answer to the petition other than such objections, to determine the questions involved, and make the order he did make, which is in the nature of a decree in equity? Does this present a situation where there is an actual adverse claim and claimant, or one where the claim is merely colorable and fictitious? Can a referee in bankruptcy make an order in effect declaring a deed of real estate made and delivered more than four months prior to the filing of a petition in bankruptcy by a party other than the bankrupt to a person other than the bankrupt fraudulent and void, and directing the person holding the title under such deed for the bankrupt to transfer such real estate by deed to the trustee? More is to be done so far as the real estate is in question than to deliver possession. A deed must be executed and delivered. The property has not come into the physical possession of the court or trustee. Both court and trustee are confronted by Grace Tompkins, not a party to the bankruptcy proceedings except as brought in as a party to the summary proceeding by the above-mentioned order to show cause, who asserts title and, as to the real estate, presents her recorded deed thereof, and shows that, after the giving of the deed, she was at times living on the farm with Logan and wife, and that as to the personal property she mortgaged the farm, and with the proceeds of the mortgage purchased same. I may assume that, if no objection had been made to determining the questions as to the personal property in this summary way, the referee would have had power to make the order he did make as to it. But has the referee any power to direct a third party to convey real estate held under a recorded deed, even if the facts proved show clearly that such third person holds as a mere trustee or agent for the bankrupt?

It has been decided that the referee in case of personal property may and must determine whether the claim of a third person who claims to be an adverse claimant is real or fictitious, merely colorable. Mueller v. Nugent, 184 U. S. 1–15, 22 Sup. Ct. 269, 46 L. Ed. 405. An assignee for the benefit of creditors is but the agent, at best, of the bankrupt who made the assignment. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814. In short, a third person having possession of personal property which in fact clearly belongs to the bankrupt is not an adverse claimant for the reason he says he is. But, if such third person has a bill of sale of such personal property, describing it, which he took from a person other than the bankrupt who in fact owned the property, and the claim of the trustee in bankruptcy is that such third party took such bill of sale by collusion with the bankrupt more than four months before bankruptcy, the filing of a petition, and to cheat and defraud creditors, and this is denied by such third person, who also claims that he is in

possession and there is a real question as to who has possession, may the whole matter be tried before the referee and determined by him? Put deed in place of bill of sale and real estate in place of personal property, and may the referee hear and determine the whole question and make a valid and binding order for the conveyance of the property to the trustee? It seems to me very clear that, as to the personal property, the referee had complete and full power and jurisdiction to determine the actual ownership of the property, and whether Grace Tompkins or Jacob Logan was in the actual possession thereof, and also whether or not prior to the filing of the petition in bankruptcy Grace Tompkins had actually made or asserted a claim of ownership and possession or had had possession. By section 38 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 555 [U. S. Comp. St. 1901, p. 3435]), subd. 4, referees may "perform such part of the duties, except as to questions arising out of the applications of bankrupts for compositions or discharges, as are by this act conferred on courts of bankruptcy and as shall be prescribed by rules or orders of the courts of bankruptcy for their respective districts, except as herein otherwise provided," etc. Rule 26 of the Northern District of New York confers all the power on referees that may be conferred under said subdivision 4, except as limited by other rules. It is true that in this case this personal property did not come into the actual physical possession of the trustee for the reason the bankrupt and his wife refused him possession. But I take it that, if Logan owned the property and had possession of it at and before the filing of the petition in bankruptcy and adjudication, he could not defeat the right of the trustee to possession or drive him to a suit in equity by refusing to surrender the possession to the trustee. The bankrupt may be compelled summarily to deliver to the trustee of his estate property which such bankrupt owns and owned at the time of the adjudication and petition and has in possession and the title to which with the right of possession passes to the trustee on his appointment by operation of law as of the date of adjudication.

In Mound Mines Co. v. Hawthorne, 173 Fed. 882, 97 C. C. A. 394 (C. C. A. 8th circuit), Mrs. Fletcher owned certain real estate which she contracted to sell to the Griffith Mines Company, and this corporation went into possession and made improvements. It did not comply with the terms of the contract, and $500 was due and unpaid to Mrs. Fletcher. In October, 1908, bankruptcy proceedings were instituted against said Griffith Mines Company, and one Hawthorne was made receiver and then trustee. After such bankruptcy proceedings were instituted, the Mound Mines Company was organized and incorporated, and later Mrs. Fletcher deeded the property to it for $500, the balance due her. Later the trustee was authorized by the court to sell, and did sell, the property of the bankrupt, including the real estate in question. The purchaser objected to the title, and a summary proceeding was instituted by petition before the referee to compel the Mound Mines Company to execute and deliver a deed of the said real estate to the purchaser thereof from

the trustee in bankruptcy on payment to it of the $500. The referee granted the order, and this was affirmed by the Circuit Court of Appeals; it being modified to provide for the payment of interest on such $500. This is direct authority for the proposition that, when a third party has record title by deed from a fourth party to real estate which in fact belongs to the trustee in bankruptcy (in that case the bankrupt and trustee being in actual possession), the court or referee may make an order in a summary proceeding, and without resort to a plenary action, to compel the execution and delivery of a deed by such third person when the real estate has come into the actual possession of the trustee.

In First National Bank v. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051, the bankrupt owned certain merchandise which was in storage with National Storage Company, and for which he took warehouse receipts. These he hypothecated for loans prior to bankruptcy to the First National Bank of Chicago. The warehouse receipts acknowledged possession of the merchandise in the Storage Company. It had possession thereof. The receiver in bankruptcy filed his petition, by which he instituted the summary proceeding to obtain possession of the merchandise in which he recited that he had taken possession of the property. This was denied, and says the court at page 291 of 198 U. S., at page 696, of 25 Sup. Ct. (49 L. Ed. 1051):

"The District Court adjudged that the receiver had not at the time of filing its petition the right of possession, and that the National Storage Company, at that date, and also at the time of the filing of the petition in bankruptcy, was entitled to possession and had possession [of the merchandise]."

It held this possession, not for the one who placed the goods in storage, but for the one who held the warehouse receipts. The court held that the First National Bank was not only an adverse claimant, but that possession was held for it, and that it was entitled thereto, and that the receiver had no possession, and was not entitled to possession. The claim was in good faith and well founded. The Supreme Court also expressly held that the referee had jurisdiction to proceed and ascertain the facts stated, and determine whether the receiver had possession or the right of possession. (Pages 290, 291 of 198 U. S., page 696 of 25 Sup. Ct. [49 L. Ed. 1051]). When the bankruptcy court determined that the Storage Company had possession and the right of possession and that the receiver had no possession, the court held that it should have refused to go further, and that the summary proceeding in the form it had assumed could not be regarded as an independent plenary suit, and that, even if so considered, there was no jurisdiction in the District Court (as the law then stood), as such a suit could be prosecuted in that court only by consent of the proposed defendant. But here the referee has found that the actual possession of the real and personal property was in the bankrupt at and before the filing of the petition in bankruptcy, and that he was the owner, and that the ownership and right of possession passed to the trustee in bankruptcy, and that Grace Tompkins never owned either the real or personal property, or had

possession thereof, that the deed to her was for the purpose of covering the property from creditors, and that she held the title as agent for the bankrupt, and not in good faith as owner. If such were the facts, the right of possession passed to the trustee, and in the eye of the law he was in possession, for the possession of Jacob. Logan under such facts was that of the trustee. Clearly the bankruptcy court under such circumstances could compel the bankrupt to deliver the possession he had to his trustee in bankruptcy. And, under the case cited, the referee had full power and jurisdiction to take evidence and determine the facts. Suppose the facts had been conceded to be as stated, could not the referee have directed the conveyance and delivery of possession? If he could proceed at all, could he not take the evidence and ascertain the facts, and, if there was a dispute, ascertain and determine the truth?

The referee has found, and there is abundant evidence to sustain the finding, that at and prior to the filing of the petition in bankruptcy Grace Tompkins was not holding the property in question, either real or personal, adversely to Jacob Logan; that she made no claim of ownership as against him, or his wife, but that, on the other hand, she was in collusion with him to cheat and defraud his creditors, conceal this property from his creditors and his trustee in bankruptcy when such proceedings should be instituted, and that she was the mere agent or bailee of said Jacob Logan in holding the Binghamton and Lestershire property by deeds, and that "said Grace Tompkins in receiving and recording the deeds of said property (Binghamton and Lestershire properties) was acting at all times as a confederate of the said Jacob Logan and a mere cover or receptacle of his title to said premises for the purpose of secreting his said property, and thereby hindering, delaying, and defrauding the creditors of said Jacob Logan."

The referee then finds that thereafter the Binghamton and Lestershire properties were deeded by Grace Tompkins to Gibson in exchange for the farm in question, and "that said Grace Tompkins, as the agent, bailee, and confederate of the said Jacob Logan, took title to said farm in her own name, and that the title to said farm and premises has been at all times and is now merely colorable, and that Jacob Logan was at all times after said title was so taken in the name of said Grace Tompkins and up to the time of his adjudication in bankruptcy the real owner of said farm, and he has been at all times since and now is in possession of and occupying said farm, and that the title to said premises or farm was so taken in the name of Grace Tompkins solely for the purpose of secreting the ownership of same for the purpose of hindering, delaying, and defrauding the creditors of said Jacob Logan, and that said Grace Tompkins is not now and never has been the owner of said farm, or any part thereof, and has not now, and never has had, any interest or claim whatsoever in, to, or against said premises, or any part thereof, and that during all of said times she has been and is now acting as a mere cover or receptacle of the title of said farm for the sole purpose of secreting same for said Jacob Logan and hindering, delay-

ing, and defrauding his creditors and the trustee of his estate." The same finding in substance and effect is made as to the personal property.

Accepting these findings which the referee had jurisdiction to make, and which it was his duty to make, if the evidence warranted them, and Grace Tompkins was not an adverse claimant at and before the filing of the petition in bankruptcy. The claim now asserted by her through her attorney to this real estate and personal property is not an adverse claim existing at the time the petition was filed. It was not made, had no existence, as against Jacob Logan. It is asserted against the trustee in bankruptcy pursuant to an agreement or understanding between her and Jacob Logan; she, in effect, being his agent and holding title for him.

In Louisville Trust Company v. Comingor, 184 U. S. 18–25, 22 Sup. Ct. 293, 296 (46 L. Ed. 413), the court said:

"We have just held in Mueller v. Nugent, ante, 1, that the District Court has power to ascertain whether in the particular instance the claim asserted is an adverse claim existing at the time the petition was filed. And, according to the conclusion reached, the court will retain jurisdiction or decline to adjudicate the merits."

This reduces the proposition here to the question whether the mere existence of the recorded deed of the farm in the name of Grace Tompkins, Logan having the possession, and Grace Tompkins holding the title as agent or bailee for Logan and by collusion with him for the purpose of secreting the property from his creditors and trustee in bankruptcy when appointed, she not claiming to own same as against Logan, constituted an adverse claim existing at the time of the filing of the petition. The deed was not the claim but the foundation for a claim, evidence upon which a claim of actual ownership and title could be based by her against Logan in possession.

In Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 275 (46 L. Ed. 405), the court held that:

"The bankruptcy court has power to compel the surrender of money or other assets of the bankrupt in his possession, or that of some one for him, on petition and rule to show cause."

Also:

"The refusal to surrender property of the bankrupt does not in itself create an adverse claim at the time the petition is filed."

And at page 17 of 184 U. S., at page 276 of 22 Sup. Ct. (46 L. Ed. 405), said:

"In the case before us William T. Nugent held this money as the agent of his father, the bankrupt, and without any claim of adverse interest in himself."

Here the referee finds the bankrupt in possession and that Miss Tompkins was and is by arrangement with Logan, who was and is the real owner, his mere agent and bailee in holding such title, claiming no interest therein as against Jacob Logan. She made no claim under or by virtue of the deed against Logan, but by collusion with Logan and placed herself in position to assert one against creditors

and the trustee in bankruptcy when appointed. It is true that on the record Grace Tompkins held the title adversely to Jacob Logan. Prima facie the title was in her, and Logan himself could not have compelled her to deed to him. But Logan was in possession and the real owner. On the adjudication and appointment of a trustee constructive possession of the farm and personal property passed to such trustee. Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. In Whitney v. Wenman, supra, 198 U. S., at pages 552, 553, 25 Sup. Ct. at page 781 (49 L. Ed. 1157), the court said:

"In the case of Mueller v. Nugent, 184 U. S. 1 [22 Sup. Ct. 269, 46 L. Ed. 405], this court recognized the power of the bankruptcy court to compel the surrender of money or other assets of the bankrupt in his possession, or that of some one for him. In that case the decisions in Bardes v. Hamarden Bank [178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175], White v. Schloerb [178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183], and Bryan v. Bernheimer [181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814], were reviewed by the Chief Justice, who delivered the opinion of the court, and it was held that the filing of a petition in bankruptcy is a caveat to all the world, and, in effect, an attachment and injunction, and that on adjudication title to the bankrupt's estate became vested in the trustee with actual or constructive possession, and placed in the custody of the bankruptcy court. We think the result of these cases is, in view of the broad powers conferred in section 2 of the bankrupt act, authorizing the bankruptcy court to cause the estate of the bankrupt to be collected, reduced to money and distributed, and to determine controversies in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy, that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same and the extent and character of liens thereon or rights therein. This conclusion accords with a number of well-considered cases in the Federal courts. In re Whitener, 105 Fed. 180 [44 C. C. A. 434]; In re Antiago Screen Door Co., 123 Fed. 249 [59 C. C. A. 248]; In re Kellogg, 121 Fed. 333 [57 C. C. A. 547]. In the case of First National Bank v. Chicago Title & Trust Company, decided May 8 of this term, ante, 198 U. S. page 280 [25 Sup. Ct. 693, 49 L. Ed. 1051], in holding that the jurisdiction of the District Court did not obtain, it was pointed out that the court had found that it was not in possession of the property. Nor can we perceive that it makes any difference that the jurisdiction is not sought to be asserted in a summary proceeding, but resort is had to an action in the nature of a plenary suit, wherein the parties can be fully heard after the due course of equitable procedure."

It is not material that the bankrupt, Jacob Logan, did not schedule this property as his own, or claim it as his own. He had determined to conceal it and his ownership from his trustee when appointed, and to this end he and Grace Tompkins placed the record title in her, Logan retaining the real ownership as well as actual possession. As stated before and as held by the Supreme Court, constructive possession has passed to the trustee and the court in bankruptcy, and it had and has power to settle and determine all rights concerning it and all claims thereto, bringing in the necessary parties by order to show cause. In Re Eppstein (C. C. A. 8th Circuit), 156 Fed. 42, 43, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465, the Circuit Court of Appeals held that in a summary proceeding a tax deed could be set aside where such deed was taken by a third person after the property had passed

to the possession of the trustee; the sale having taken place before the petition in bankruptcy was filed. This case is in line with Mound Mines Company v. Hawthorne, 173 Fed. 882, 97 C. C. A. 394, before cited.

In Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, a corporation was adjudicated a bankrupt and a trustee appointed who demanded the corporate records and stock books of the president of the corporate company who had them in his possession. The president refused the demand in writing, saying that he was advised "that such records and stock books are not documents relating to the property of the bankrupt, and therefor you, as trustee in bankruptcy, are not entitled to their possession." It is noted at once that the trustee had no actual possession, only that constructive possession which every trustee has of property of the bankrupt in the possession of the bankrupt when the petition is filed and adjudication made. Application was made to the district judge on petition for an order directing the delivery of the books and records and this was denied. The Supreme Court reversed, and held that the order should have been granted; there being no adverse title asserted. In Re Von Hartz et al., 142 Fed. 726, 74 C. C. A. 58, referred to in the opinion in Babbitt v. Dutcher, supra, 216 U. S. 114, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, the policy of insurance was in the actual possession of the assignee thereof who held and claimed under a written assignment thereof. The bankrupt had no possession, and his trustee no actual or constructive possession. If books and papers in the hands of the president of a bankrupt corporation which he refuses on demand to deliver to the trustee can be ordered delivered in a summary proceeding, I see no reason why real estate and other personal property owned by the bankrupt and found in his actual possession cannot be ordered delivered to the trustee in a summary proceeding. In Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620, one Silsby before bankruptcy had become surety on the bond of the bankrupt in a suit pending in the state court, and had certain money of the bankrupt which he held as indemnity for such liability. It was held that, as the suits could be prosecuted and collection made of the surety in the state courts, he was an adverse claimant, and that he could not be compelled to pay over such money to the trustee.

In Clay v. Waters, 178 Fed. 385, 392, 101 C. C. A. 645, 652, 21 Ann. Cas. 897 (C. C. A. 8th Circuit), the court says:

"But the property here in controversy was in the possession of the bankrupt when the petition was filed and when the adjudication was made, and it then passed within the jurisdiction of the District Court below. The second section of the bankruptcy law invests the District Court sitting in bankruptcy with power to '(7) cause the estates of bankrupts to be collected, reduced to money and distributed and, determine controversies in relation thereto except as otherwise provided,' and the exception is of cases involving those controversies between trustees in bankruptcy and adverse claimants specified in section 23, which relate to property which was not in the possession of the bankrupt when the petition for adjudication was filed, and in which the defendants do not consent to suits in the District Courts. The District Court sitting in bankruptcy has jurisdiction to determine by sum-

mary proceedings, after a reasonable notice to claimants to present their claims to it, controversies between the trustee and adverse claimants over liens upon and the title and possession of (1) property in the possession of the bankrupt when the petition in bankruptcy is filed; (2) property held by third parties for him; (3) property lawfully seized by the marshal as the bankrupt's under clause 3 of section 2 of the bankruptcy law; and (4) property claimed by the trustee which has been lawfully reduced to actual possession by the officers of the court. Such controversies are controversies in proceedings in bankruptcy under section 2, and they are not controversies at law or in equity as distinguished from proceedings in bankruptcy within the meaning of section 23."

[2] It seems to me that, under the decisions of the Circuit Courts of Appeal and the Supreme Court of the United States, the test of jurisdiction to proceed in a summary way or by a summary proceeding to determine controversies in regard to real or personal property is possession of such property in or by the bankrupt at the time of the filing of the petition and adjudication. Of course, mere possession is not enough. The finding must be and the facts must warrant the finding that the bankrupt was the true owner, and that he held as owner. Jurisdiction to proceed in this manner is not defeated by a claim of ownership made by a third person asserted for the first time after a petition in bankruptcy is filed, even though the groundwork for such a claim had been prepared beforehand. Should a bankrupt make, execute, and deliver a formal bill of sale of personal property to another, retaining possession of the property, and agree with such person that he should hold title for the bankrupt until the termination of bankruptcy proceedings, the paper title thus held would be merely colorable, and it seems to me that a summary proceeding would be proper, even though both bankrupt and such vendee should claim that the bankrupt's possession was as agent or bailee of the person holding the bill of sale. I do not see that it makes any difference that the property in question is real estate and not personal property, and that the transfer of title is a deed, and not a bill of sale. Under such circumstances, it cannot be material that the deed was executed and delivered and recorded more than four months prior to the bankruptcy, nor can it be material that the deed of the property came from another party, the bankrupt paying the consideration therefor and the transaction being one intended to cover and conceal the bankrupt's property from creditors and the trustee in bankruptcy when appointed. It cannot be that a plenary suit in such case is necessary in order to reach the property. The property comes at once within the jurisdiction of the bankruptcy court and constructively into its possession, it being in possession of the bankrupt himself, and no claim adverse to the bankrupt having been made prior to the institution of the bankruptcy proceedings.

In this case Logan, his wife, and Miss Tompkins were before the referee. The referee had the advantage of seeing and hearing them, and noting their manner, and it was his duty to ascertain and determine the truth. It has been held many times that the court itself should not disturb the findings of fact made by a referee, unless clearly unsupported by the evidence. The notes which Miss Tompkins claims to have surrendered to Logan as a consideration for the

transfer to her of the Binghamton and Lestershire properties which were exchanged for the Laurens farm are returned by the referee with the other evidence in the case, and, while one is written in red ink and two or more with an indelible pencil, no one of them shows age, and after reading the evidence of Logan, Miss Tompkins, and the other witnesses in the case, and considering the other circumstances, this court cannot say that the referee was not justified in making the findings he did. The attorney for Logan and Miss Tompkins claims, not that they did not have full opportunity to present all the evidence in existence bearing on the questions at issue, but that in the plenary suit Logan and Miss Tompkins would have been entitled to a trial by jury. The suit, if brought, would be in equity, and neither party would be entitled to a jury trial as matter of right. I feel compelled, therefore, to affirm the order appealed from so far as it relates to the farm and the personal property thereon.

This brings us to a consideration of the order so far as it relates to the delivery to the trustee of the note for $2,000 made by Grace Tompkins to Jane Logan.

I am not able to discover any theory upon which the trustee is entitled to this note of Grace Tompkins. It is made by Grace Tompkins to Jane Logan, and was delivered to her. It is true that Logan placed title in his wife jointly with himself to the Binghamton property, and then both deeded to Grace Tompkins. This was a part of the fraudulent scheme to conceal the property of Jacob Logan, but the whole title was passed to Grace Tompkins, who, in turn, placed the title in Gibson in exchange for the farm, and, when she and Mr. and Mrs. Logan surrender that, they have, so far as appears, surrendered all the property of Jacob Logan. The question of the rights of Mrs. Logan as against Grace Tompkins we need not dwell upon. True, the note is an evidence of indebtedness of Grace Tompkins to Jane Logan, and was given for whatever interest Jane Logan held in the property. If surrendered to the trustee, he could not enforce it under the findings of the referee. The note in the possession of Jane Logan in no way impairs or incumbers the title of the farm or of the personal property thereon. The note has no validity as against Jacob Logan, the bankrupt, or his estate, and clearly creates no liability on the part of Grace Tompkins to Jacob Logan or his estate in bankruptcy. Under the evidence and findings of the referee, that note is a worthless thing so far as the farm and personal property thereon is concerned, and so far as the estate in bankruptcy of Jacob Logan is concerned. It was never in the possession of Jacob Logan, the bankrupt, and the trustee and court have no actual or constructive possession thereof.

The order of the referee is affirmed so far as it relates to the farm and personal property thereon, and is reversed as to the note of $2,000 given by Grace Tompkins to Mrs. Logan.