In re ROSENBAUM MIRROR MFG. CO., Inc.

No. 61952.

District Court, D. New York.

May 14, 1935.

N. William Welling, of New York City, for receiver.

Irving Husin, of New York City, for respondent.

HULBERT, District Judge.

The alleged bankrupt was incorporated under the laws of the state of New York in 1932 and has since been engaged in business and is now located at 40 West Twenty-Seventh street, borough of Manhattan, New York City.

An involuntary petition was filed against it on March 29, 1935. On that date Francis E. Rivers, Esq., was appointed receiver, qualified as such, and took possession of all of the assets of the alleged bankrupt.

A verified answer was filed April 6, 1935, denying insolvency, and a jury trial of the issue has been demanded. In the present congested condition of the calendar in the Southern District of New York, that phase of the case is not likely to be heard until the fall of 1935.

Morris Rosenbaum, president, Jacob Rosenbaum (his father) vice president, and Fannie Rosenbaum (a sister of Morris) secretary, treasurer, and bookkeeper of the alleged bankrupt have been examined by the receiver's attorney pursuant to section 21a of the Bankruptcy Act, 11 USCA § 44 (a).

On April 26, 1935, the receiver presented a petition and obtained an order directing Morris Rosenbaum to show cause why he should not turn over $25,000 to the receiver which he claims belongs to the estate and is possessed by Rosenbaum. Upon the return of said order an answer was interposed and the matter was referred to John E. Joyce, Esq., as special master to hear and report. At the first hearing before him and prior to the taking of any testimony a motion was made to dismiss the motion for a turnover upon the ground that the receiver is without authority to institute or prosecute the same. Evidently the special master doubted his power to hear and determine that question and adjourned the hearing, and this motion was then brought on before the court.

It is true that the receiver represents neither the creditors nor the bankrupt.

[1] In Re Dempster (C. C. A., 8th Cir.) 172 F. 353, 357, 22 A. B. R. 751, Judge Amidon said: "When necessary for its preservation, the court may direct him to take possession of property, although the same is held adversely under a claim of right—property so situated that the trustee could only recover it by a plenary action."

■ Judge Hough, referring to the same subject in Re Haupt Bros. (D. C., N. Y.) 153 F. 239, 240, 18 A. B. R. 585, said: "The remedy here asked for is confessedly a most drastic one. It should never be used, except in the clearest case, and to prevent obvious loss through equally obvious fraud."

The papers in this case are barren of the facts and I have had recourse to the stenographer's minutes of the 21a hearings before the special master who, at my request, has furnished me with the original transcript.

■ As I shall predicate my decision of this application thereon, I shall briefly review the testimony.

The Rosenbaum Mirror Manufacturing Company, Inc., appears to be a family corporation; a mere legal shell through which father, son, and daughter presumed to act as a corporate entity when as a matter of fact the business has been conducted with little regard for corporate obligations and responsibilities on the part of its officers.

Jacob Rosenbaum, who came to the United States about 27 years ago, had for some time engaged in the sale or manufacture and sale of mirrors. Thereafter, his daughter Fannie engaged in a similar business, although she did not know from whence came the money which enabled her to begin the business in which she was the sole person interested. Her father and brother, Morris, worked for her. In 1932 the alleged bankrupt corporation was organized and Fannie transferred her business to it, but never received either money or stock in payment therefor. Although she acted as bookkeeper, as well as secretary and treasurer of the company, she did not know who the directors were, or if there were any; she did not know whether any certificates of stock were ever issued. When the minute book was produced to enable her to refresh her recollection, she denied ever having seen it before.

The company had its only bank account in the Amalgamated Bank of New York, and provision was made on the checks drawn thereon for signatures by the president, vice president, or treasurer.

There were produced upon said 21a examination some 42 checks drawn upon said bank account between February 28, 1935, and March 29, 1935, aggregating approximately $25,000. These checks all bear the signature F. Rosenbaum, treasurer. Twenty of these checks were drawn

to cash and Morris Rosenbaum received the proceeds but did not give any logical explanation of the disposition of same. As to some he had no recollection; others he gave "in exchange" to make good checks he had drawn on various banks where he had an account; the checks thus taken up by this cash used for exchange were not corporate checks.

Sixteen checks were drawn to the order of "Super Plate Glass" which was not within the ken of Miss Rosenbaum.

A tabulation of these checks is set forth:

| Dated | Number | Amount |
|---|---|---|
| February 28, 1935 | 2357 | $ 593 |
| March 1, 1935 | 2358 | 760 |
| March 4, 1935 | 2365 | 725 |
| March 5, 1935 | 2372 | 650 |
| March 7, 1935 | 2386 | 422 |
| March 8, 1935 | 2390 | 618 |
| March 9, 1935 | 2395 | 450 |
| March 11, 1935 | 2403 | 725 |
| March 12, 1935 | 2408 | 740 |
| March 13, 1935 | 2412 | 470 |
| March 14, 1935 | 2420 | 795 |
| March 15, 1935 | 2426 | 823 |
| March 15, 1935 | 2450 | 950 |
| March 19, 1935 | 2455 | 1,250 |
| March 21, 1935 | 2471 | 865 |
| March 22, 1935 | 2474 | 910 |

All of these checks were indorsed "Super Plate Glass" "M. Rosenbaum." Morris Rosenbaum testified the words "Super Plate Glass" were in his handwriting.. He refused, however, to identify the signature "M. Rosenbaum" upon the ground that it might incriminate him. Nevertheless, he did admit receipt of the proceeds of all of said checks, claimed they were used "in exchange," and that checks he took up were not checks of the corporation and did not represent corporate indebtedness.

There were also six checks payable to Durable Metal as follows:

| Dated | Number | Amount |
|---|---|---|
| March 4, 1935 | 2366 | $500 |
| March 8, 1935 | 2391 | 430 |
| March 11, 1935 | 2402 | 531 |
| March 14, 1935 | 2419 | 910 |
| March 15, 1935 | 2451 | 774 |
| March 19, 1935 | 2454 | 975 |

All of these checks were indorsed "Durable Metal" "M. Rosenbaum Pres." and also indorsed "Jack Altman," except No. 2419. The proceeds of the checks were likewise used by Morris Rosenbaum "in exchange," but he would not state whether "Durable Metal" was a customer of the alleged bankrupt as to do so might incriminate him.

Fannie Rosenbaum further testified that she carried no account on the books for "Super Plate Glass," or "Durable Metal," as a creditor or otherwise.

Morris admitted Fairview Mirror & Novelty Company had been in existence since the early part of 1935, was located at 80 Dale avenue, Paterson, N. J., and owned by Irving Rosenbaum, another son of Jacob. Although he had been to the said place of business of Irving, Jacob did not know where Irving lived or anything about his business. Morris testified the alleged bankrupt had furnished the raw material and met the pay roll of Fairview, and Irving manufactured and delivered the finished product to or for the alleged bankrupt, but the contract between them was oral and he was all too evasive about its terms.

From a perusal and analysis of this testimony, the conclusion is inescapable that the Rosenbaums had no regard for an oath and not much appreciation of moral turpitude. While I should be reluctant to do violence to the Bankruptcy Act in aiding a receiver to recover property from a third person or even as to the unadjudicated alleged bankrupt, upon the facts of this case, I feel it would be a perversion of justice not to sustain the receiver, and the motion is denied.