Arthur T. WASSERMAN, Appellant,

v.

Timothy J. DRISCOLL, Receiver,
Appellee.

No. 5645.

United States Court of Appeals
First Circuit.

Heard June 7, 1960.

Decided Sept. 22, 1960.

Arthur T. Wasserman, Boston, Mass., with whom Louis J. Shrair, Julius Thannhauser and Wasserman & Salter, Boston, Mass., were on the brief, for appellant.

Lawrence E. Cooke, Boston, Mass., for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts granting the petition of a receiver in bankruptcy for an order directing respondent to turn over to the receiver assets of the alleged bankrupt held by the respondent.

The district court made the following findings. Peter Mackin, the alleged bankrupt, was on April 28, 1959, and prior thereto, an individual engaged in the businesses of home and industrial oil, trucking, sand and gravel, manufacture of cement blocks, construction and sale of appliances. He also owned various parcels of real estate. In April 1959 the real estate and substantially all of the equipment used in Mackin's various businesses were subject to mortgages, conditional sales, or other security interests and he was unable to raise further monies on a security basis. On April 28, 1959 Mackin's current unsecured trade indebtedness amounted to approximately $175,000, mostly overdue. Additionally, Mackin owed approximately $90,000 to various relatives. Mackin's cash balance in the bank for his businesses on that date was approximately $44.

During April 1959 respondent, Arthur T. Wasserman, representing Esso Standard Oil Company, demanded payment of approximately $60,000 owed to Esso Standard Oil Company. Mackin paid $15,000 by check, but stated he could not meet the installments on the balance requested by Wasserman. About that time Wasserman hired an appraiser to make a liquidation sale appraisal of Mackin's assets. The appraisal was made about April 21.

On April 28 Mackin was called to a meeting in Wasserman's office at which were also present officers and agents of the First National Bank of Boston, counsel for the Bank, and an officer or employee of the Esso Standard Oil Company. Mackin was for the first time presented with various documents and asked to sign them. Mackin initially refused and asked to be allowed to consult an attorney about the transaction. Wasserman stated before all those present that no more time would be given and, if Mackin did not sign, attachment of all his equipment and property would be made the following day. Mackin then read and signed the documents.

The documents mentioned above were: (1) a demand note to the order of Arthur T. Wasserman for $360,000; (2) a document denominated "Trust Indenture" in which Mackin agreed to perform various covenants; (3) a real estate mortgage by Mackin and his wife to Arthur T. Wasserman, securing payment of the note and performance of the terms of the "Trust Indenture"; (4) a "Security Agreement" granting to Arthur T. Wasserman a security interest in the personal property of Mackin to secure the performance of the terms of the "Trust Indenture" and the payment of the $360,-

000 as provided in the note, and other liabilities under and by virtue of the terms of the "Trust Indenture."

Included in the real estate mortgage was a parcel of land which Mackin had conveyed to his wife by deed dated March 3, 1959. The Commonwealth of Massachusetts had staked out 500 acres of this land for the purpose of building a highway. Knowing these facts those present at the April 28 meeting forced Mackin to induce his wife to sign a mortgage of all her interest in the land to Wasserman, although it was not an asset of the estate of the alleged bankrupt Mackin.

On May 4, 1959 Wasserman and the Creditors Committee, which had been appointed under the "Trust Indenture", designated Rudolph Singer as their agent to operate the business of Mackin although no demand for payment of the note had been made and no default under the terms of the "Trust Indenture" had occurred. Mackin was placed on salary of $150 per week. Singer took charge of the business on May 6, 1959. All the cash receipts and deposits in the name of Mackin were deposited on May 26, 1959 to an account in the name of Arthur T. Wasserman, Trustee. Another account was opened in the name of Singer and Mackin, and checks drawn on this account were required to be signed by both men. Checks necessary in Singer's discretion to operate the business were issued on this latter account, and the money to cover such expenditures was supplied by Wasserman, after his approval, by checks drawn on the account of Wasserman, Trustee.

Singer was on the Mackin business premises about three days a week and was in complete control of the financial aspects of the business. Singer also sought out some creditors and persuaded them to continue to sell merchandise to Mackin, representing that Wasserman, as Trustee, was in control of the funds of Mackin's businesses and they would be paid by Wasserman. Some bills sent thereafter were in the name of Wasserman, Trustee.

After the appointment of Singer, Mackin was told by one of the creditors, in the presence of Wasserman and other members of the Creditors Committee, that Mackin was no longer running the businesses and that nothing should be done without their approval. In May 1959 Wasserman told Mackin that his retail appliance business was to be liquidated. Despite Mackin's objections, Wasserman hired an auctioneer and all the merchandise was sold at public auction. The store, also used in connection with Mackin's other businesses, was vacated.

On April 28, 1959 Mackin was engaged in the performance of construction contracts in a total amount of over $300,000, the greater part of which was due to be completed by the end of August 1959. About May 20, 1959 Mackin informed Wasserman and the Creditors Committee he wanted to bid on another construction job and requested a certified check for $4,000 to use as a deposit on his bid. Mackin was first told by Wasserman that if Mackin could get assurance of a performance and payment bond he could have the check for use as a deposit. Later when Mackin said he thought he could get the bond, Wasserman refused to give a check for the deposit and refused to finance the job under any circumstances.

The minutes of the Creditors Committee meeting of June 26, 1959 recorded its decision to liquidate Mackin's businesses at the end of the construction jobs then underway. About August 12 Wasserman hired Aaron Krock, an auctioneer, to advertise and conduct a liquidation sale of Mackin's assets on September 10, 1959.

On August 24, 1959 demand for payment of the note of April 28 was made for the first time. On August 25 Wasserman, purporting to act under powers given by the "Trust Indenture", made entry upon the real estate and took token possession of the tangible assets. On August 26 an involuntary petition in

bankruptcy was filed by three creditors of Mackin.[1]

The district court found (1) that Wasserman, the Esso Standard Oil Company, the First National Bank of Boston and Mackin knew on April 28, 1959 that there was no reasonable expectation that Mackin could pay in full the amount of the note upon demand, nor the amount of his unsecured indebtedness; (2) upon the execution of the documents Mackin had no real equity of redemption, since upon liquidation the Creditors Committee itself estimated a $32,000 deficit; (3) it was the intention of Wasserman and the members of the Creditors Committee after four months to carry out a speedy liquidation of all the assets of Mackin for the benefit of all creditors who assented to the "Trust Indenture" in the same fashion and manner as if an assignment for the benefit of creditors in its usual form had been executed. The district court concluded that the transaction constituted an effectual assignment for the benefit of creditors within the meaning of Section 2, sub. a(21) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 11, sub. a(21) since the equity of redemption in the circumstances was a sham, and the trustee under the instruments took immediate possession and control of Mackin's businesses and proceeded to a liquidation of all the assets of Mackin.

The court further found that respondent Wasserman was in possession and control of $11,618.86 deposited to the name of Wasserman which belonged to Mackin and that Wasserman purported to be mortgagee in possession of the real estate and tangible assets of Mackin. The court ordered respondent (1) to deliver to the receiver all property of the alleged bankrupt in respondent's possession and control, (2) to file an accounting for the disposition by respondent of the property of the alleged bankrupt for the period April 28, 1959 to date, (3) to execute and deliver an assignment to the receiver of the mortgage and the security agreement. The order also provided that, if the alleged bankrupt is not finally adjudged a bankrupt, and if no arrangement is proposed and confirmed, the ordered assignments shall be null and void.

Respondent contends the district court erred in granting the turnover petition because (1) the petition was premature, since there was yet no adjudication in bankruptcy; (2) respondent was not subject to the summary jurisdiction of the district court, because respondent held the property under a bona fide adverse claim of right; (3) the instrument before the district court constituted a valid trust mortgage. In regard to the property standing in the name of Helen L. Mackin, respondent contends the district court did not have summary jurisdiction to order its turnover to the receiver. Respondent further contends that unfair and biased conduct by the district judge deprived respondent of a fair trial, and respondent seeks a new trial before another judge.

Respondent's first contention is based on the theory that an assignment for the benefit of creditors is valid until there has been an adjudication in bankruptcy, and as long as the title of the assignee is good, there cannot be a court order for the turnover of assets held by the assignee. Respondent's position is supported by 1 Remington, Bankruptcy § 338, p. 488 (5th ed. 1950).

Nevertheless, Section 2, sub. a(21) of the Bankruptcy Act provides:

"(a) * * * [C]ourts of bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, * * * to—

* * * * * *

"(21) Require * * * assignees for the benefit of creditors, * * * to deliver the property in

---

[1] Thereafter a petition for the appointment of a receiver was granted. The receiver filed the instant petition. To the present time there is no record of a bankruptcy adjudication.

**506**

their possession or under their control to the receiver or trustee appointed under this title, * * * and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor: *Provided, however,* That such delivery and accounting shall not be required, * * * if * * * the assignment was made * * * more than four months prior to the date of bankruptcy * * *."

■ In conjunction with Section 2 sub. a(3), which authorizes the appointment of a receiver subsequent to the filing of a petition in bankruptcy, if it is "necessary to preserve the estate or to prevent loss thereto," Section 2, sub. a(21) seems to clearly authorize turnover orders as to assignees for the benefit of creditors, prior to an adjudication in connection with the use of a receiver to preserve the assets of the alleged bankrupt and protect the interests of the creditors.

This interpretation of Section 2, sub. a(21) is reinforced by the Supreme Court's reasoning in Emil v. Hanley, 1943, 318 U.S. 515, 63 S.Ct. 687, 87 L.Ed. 954. In that case the statute's authorization of an accounting to the bankruptcy court was held not to apply to a receiver appointed by a state court within four months of bankruptcy as an incident to the enforcement of a mortgage lien whose validity was not challenged. Since an adjudication would not supersede the mortgage, the receiver appointed as an incident to its enforcement was not under the bankruptcy court's supervisory powers. In the case of a claim that would be superseded, as here, see 1 Collier Bankruptcy ¶ 2.78 pp. 342-48 (14th ed. 1956), however, we believe that the statute authorizes the bankruptcy court to order a turnover of assets. See Davis v. Bohle, 8 Cir., 1899, 92 F. 325; In re Rosenbaum Mirror Mfg. Co., D.C.D.N.Y.1935, 11 F.Supp. 415, affirmed, 2 Cir., 1936, 86 F.2d 1011.

■ Respondent's second point is that since he has answered the petition by setting forth grounds that if supported would give him a bona fide adverse claim of right to the property in his possession, the bankruptcy court does not have jurisdiction to issue a turnover order, unless the claim is merely colorable. But there is a countervailing principle that a bankruptcy court has summary jurisdiction to determine whether or not the property concerned is in its actual or constructive possession, and if it is in such possession the bankruptcy court has summary jurisdiction to decide the various claims to it. Taubel, etc., Co. v. Fox, 1924, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770; In re Logan, D.C.N.D.N.Y.1912, 196 F. 678; In re American Fidelity Corporation, D.C.S.D.Cal.1939, 28 F.Supp. 462.

■ The petition alleged that respondent was, in effect, an assignee for the benefit of creditors. An assignee for the benefit of creditors is, in law, an agent of the bankrupt and possession by such assignee is sufficient to subject the property to the summary jurisdiction of the bankruptcy court. Under the principle of the American Fidelity case, we conclude that the district court had summary jurisdiction to determine if the possession of the respondent was as an assignee for the benefit of creditors, and for the purpose of so determining to decide the merits of the controversy over that point. See Thompson v. Magnolia Co., 1940, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876. The mere assertion of a claim is not sufficient. Atlanta Flooring & Insulation Co. v. Russell, 5 Cir., 146 F.2d 884, certiorari denied 1945, 325 U.S. 862, 65 S.Ct. 1202, 89 L.Ed. 1983. Any other result, in our opinion, would greatly vitiate Section 2(a) (21). See 1 Collier, Bankruptcy ¶ 2.78 n. 33, p. 344 (14 ed. 1956).

■ Respondent's third contention of error by the district court is that the transaction involving the April 28 documents was a bona fide security transaction and that the district court erred in concluding otherwise. Respondent relies on those aspects of the complete transaction which point to Mackin's control of the business after April 28. But those

aspects of the transaction which point in the other direction cannot be ignored, and we cannot say that, viewing the whole record, the district court was clearly in error in its findings.

■ We have reviewed the record in connection with respondent's contention that the district judge displayed such bias and hostility toward respondent as to deprive him of a fair trial. Although the district judge limited respondent at various points during the rather lengthy hearing on the petition, we think that this was cured by the district judge's later invitation to respondent to put in whatever evidence he desired. As to the other allegations of bias, we are not persuaded that, in the circumstances of this case, including the fact that respondent personally examined witnesses despite his involvement in the original transaction, respondent was deprived by the district judge of a full and fair hearing.

■ One other point raised by respondent remains. Respondent asserts that the turnover order's coverage of the real property standing in Mrs. Mackin's name is error. However, since the district court's finding on the underlying transaction was that it was an assignment for the benefit of creditors, we believe that it would not have been proper to leave this property in the hands of respondent. Since there is no evidence of a bona fide adverse claim of title by Mrs. Mackin, we conclude that the turnover to the receiver is not unwarranted. See Section 2, sub. a(15) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(15) (1958). The district court is empowered to make whatever orders may be called for by the interest of justice in the full circumstances of this claim. We do not think that Mrs. Mackin has yet been deprived of any rights in this regard.

Judgment will be entered affirming the order of the district court.

ALDRICH, Circuit Judge (concurring).

On the bare allegations of the petition, seeking "all property, tangible or intangible * * * of the alleged bankrupt * * *" without further identification, it is not too clear to me what rights petitioner has in the real estate which was conveyed to appellant by Mrs. Mackin and which is described in the opinion, and found by the court below, to be "not an asset of the estate of the alleged bankrupt." I think it no answer to say that the general conveyance of April 28 to which she contributed was an assignment for the benefit of Mackin's creditors and hence that the receiver was entitled to it. This is true as to Mackin's property. Whether, strictly, he made an assignment for the benefit of creditors, or attempted to prefer certain creditors, his action was voidable. Mrs. Mackin, however, was entitled to do with her own property whatever she pleased, and if she wanted to give it to appellant, that was her privilege. (Alternatively, she might have been willing to convey for her husband's creditors only if there was going to be no bankruptcy.) The receiver's maximum interest is in property in the possession of the bankrupt's assignee to which a subsequent trustee may have a claim. Such property he may presently preserve, pending resolution of conflicting claims by the bankruptcy court. See section 69, sub. a, 11 U.S.C.A. § 109, sub. a; §§ 2, sub. a(3), 2, sub. a (21), 11 U.S.C.A. §§ 11, sub. a(3), 11, sub. a(21); Murphy v. John Hofman Co., 1909, 211 U.S. 562, 29 S.Ct. 154, 53 L.Ed. 327; Whitney v. Wenman, 1905, 198 U.S. 539, 25 S.Ct. 778, 49 L.Ed. 1157; cf. Sharpe v. Doyle, 1880, 102 U.S. 686, 26 L.Ed. 277. But I could not agree that a receiver or trustee has any rights in property that indisputably had belonged to a third party simply because it had been conveyed to an assignee for creditors. Cf. Feder v. John Engelhorn & Sons, 2 Cir., 1953, 202 F.2d 411.

However, the fact that Mrs. Mackin had received the property from her husband less than two months before, coupled with her readiness to make this conveyance, suggests that his transfer to her may have been in fraud of creditors, a fact which would entitle a trustee to

make a claim under sections 70 or 67 (d) of the act. Accordingly, making reluctant allowance for petitioner's failure to assert such a claim, and interpreting the court's opinion as leaving such an issue to the later determination of the bankruptcy court, I am willing to concur in the result.